UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAXIE DACOSTA,<br><br>                  Plaintiff,<br><br>     -against-<br><br>CITY OF NEW YORK, DET. DAVID SHAPIRO (Shield #6054), and P.O.s "JOHN AND JANE DOE" #1 through #20, individually and in their official capacities (the names "John and Jane Doe" being fictitious, as the true names of these individuals are presently unknown),<br>                Defendants. | 15-cv-5174-JBW-RLM |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Maxie DaCosta ("Plaintiff"), by his attorneys, Richman Law Group, pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment.

## BACKGROUND

On July 28, 2007, at approximately 8:00 pm, a robbery allegedly occurred at a sporting goods store located at 116-15 Liberty Avenue in the County of Queens. Pl. 56.1 Statement, ¶ 1. The next day, July 29, 2007, Defendant Officers showed Mohammad Sarwar, one of three witnesses to the alleged robbery, the 106th Precinct's Robbery Recidivists, as well as a photo array comprising 125 pages and 7,000 photographs. Sarwar failed to identify the perpetrator. Ex. C, Follow-Up Report, July 28, 2007.

On August 2, 2007, Anita Saunders, also a witness to the alleged robbery, viewed a photo array of possible suspects based on a description that she had given the police. Detective Fortunato Tranchina (Shield No. 509; Tax ID No. 920907) also showed Saunders video of Plaintiff that had been taken from the building located next door to the sporting goods store the day before the alleged robbery. Saunders told Detective Tranchina that she "could not be 100% sure" that the person in the video was the same person who committed the alleged robbery. Saunders also could not identify the perpetrator of the alleged robbery in the 810 photographs she reviewed, stating that the photos were "starting to look the same." Ex. C, Follow-Up Report, August 2, 2007.

On August 3, 2007, Detective Tranchina showed James Cadawan, the third witness to the alleged robbery, a photo array comprising 1,000 photographs. Cadawan failed to identify the alleged perpetrator. Detective Tranchina showed Cadawan the same video that he had shown

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

Saunders the day before, but Cadawan also could not be certain that the man in the video was the perpetrator. Ex. C, Follow-Up Report, August 17, 2007.

On August 30, 2007, Sarwar informed Detective Tranchina that he had been watching the news the previous evening and seen the photograph of Plaintiff on the wanted poster. Sarwar informed Detective Tranchina that he recognized Plaintiff to be the person who had committed the alleged robbery. The same day, Sarwar selected Plaintiff's photograph from a photo array. Detective Tranchina asked Cadawan and Saunders whether they had seen the televised photograph of Plaintiff on the news. Cadawan and Saunders confirmed that they had seen the photograph, but both said they could not be 100% sure that Plaintiff was the person who had committed the alleged robbery based on the photograph. Nevertheless, on August 31, 2007, Tranchina caused a "wanted card" to be submitted for Plaintiff. Pl. 56.1 Statement, ¶¶ 2-4, 7.

On March 11, 2008, Tranchina and other Defendant Officers, including a Detective Rogers and a Police Officer Loschiavo, transported Plaintiff from Rikers Island, where he had been incarcerated for approximately four months in connection with two charges unrelated to the alleged robbery, to the 106th Precinct for a lineup. Pl. 56.1 Statement, ¶ 8.

One witness, Mohammad Sarwar, identified Plaintiff as the perpetrator of the alleged robbery. Cadawan and Saunders, however, failed to identify Plaintiff. In fact, Cadawan stated that he did not recognize *anyone* in the lineup, and Saunders, for her part, said she was "80% sure" that a different individual in the lineup was the perpetrator. *Id.*

Despite the results of the lineup, which were inconclusive at best, Detective Tranchina generated another "take out order" for Plaintiff's arrest. *Id.* On or about April 24, 2008, Defendant

Officers, including Detective Tranchina, apprehended Plaintiff at Rikers Island in connection with the alleged sporting-goods-store robbery Pl. 56.1 Statement, ¶ 9.

Lacking any probable cause, Defendants proceeded to maliciously prosecute Plaintiff for the alleged robbery. Finally, on or around September 6, 2012, after Plaintiff had suffered 52 months of incarceration, the Queens County District Attorney's office dismissed the robbery charge and any and all charges related thereto in favor of Plaintiff. The District Attorney stated that based on videotape of the alleged robbery, it was certain that DaCosta was not the perpetrator. Pl. 56.1 Statement, ¶ 13.

## STANDARD OF REVIEW

A court may not grant a motion for summary judgment unless all of the parties' submissions, read together, reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).

It is well settled that summary judgment under Fed. R. Civ. P. 56(c) is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" within the meaning of Fed. R. Civ. P. 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quotation omitted).

The moving party bears the burden of "establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't,* 613 F.3d 336, 340 (2d Cir. 2010). In contrast, it is the non-movant that benefits from a court's construction of all facts, and the resolution of all ambiguities, in its favor. *See Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) ("In determining whether summary judgment is appropriate, this Court will 'construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'") (internal citations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). "[I]f 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

## ARGUMENT

## PLAINTIFF'S MALICIOUS PROSECUTION CLAIM SHOULD NOT BE DISMISSED

A.      There Exist Issues of Fact as to Probable Cause to Prosecute Plaintiff for the Robbery

The Court should deny Defendants' motion for summary judgment as to Plaintiff's malicious prosecution claim because there exist issues of material fact as to whether, at the time

Defendants commenced the prosecution, there was no probable cause to charge Plaintiff with the robbery.

To state a claim for malicious prosecution under New York law, the plaintiff must show: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *See Manganiello v. City of N.Y.*, 612 F.3d 149, 160-61 (2d Cir. 2010) (citations omitted). In addition, a plaintiff in a federal malicious prosecution action must show "a deprivation of liberty consistent with the concept of seizure." *Cunningham v. New York City*, 04 Civ. 10232 (LBS), 2007 U.S. Dist. LEXIS 69801, at *12 (S.D.N.Y. Sept. 18, 2007) (quoting *Singer v. Fulton County Sheriff,* 63 F.3d 100, 116 (2d Cir.1995)). It is undisputed that a criminal proceeding was initiated against Plaintiff, that this proceeding terminated in Plaintiff's favor, and that Plaintiff was deprived of his liberty for the duration of his 52-month incarceration as a result of this proceeding. *See* Ex. A, Certificate of Disposition.

The issues of fact for a jury are, therefore, whether Defendants allowed the prosecution to go forward without probable cause and with malice. Contrary to Defendants' contention, it is far from established that there was probable cause at the time of either the initial arrest or the commencement of the prosecution.

Detective Tranchina initiated Plaintiff's arrest based solely on the identification made by Mohammed Sarwar. Ex. B, Tranchina Dep., 107:17-108:9. Mr. Sarwar was an eyewitness to the robbery, but his identification of Plaintiff, which resulted from an unduly suggestive identification procedure and was contradicted by the other eyewitnesses, was fraught with issues that should

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

have raised red flags. Given the totality of the circumstances, a jury could find that a reasonable officer would have recognized Sarwar's identification as unreliable. *See De Michele v. City of New York*, 2012 U.S. Dist. LEXIS 136460, at \*21 ("Police officers, when making a probable cause determination, are entitled to rely on a victim's allegations … *unless the circumstances raise doubt as to the person's veracity.*") (emphasis added) (citing *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995)); *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007) ("Probable cause is, of course, evaluated on the totality of the circumstances.").

On July 29, 2007, one day after the robbery, Sarwar was present at the 106th Precinct to review photographs of individuals potentially matching the basic description of the perpetrator. Ex. C, Follow-Up Report, July 29, 2007. After reviewing 125 pages of photographs (totaling over 700 photographs), Sarwar was unable to identify the perpetrator. *Id.*; Ex. B, Tranchina Dep., 106:22-107:6. Shortly thereafter, two other eyewitnesses, Anita Saunders and James Cadawan, visited the precinct to review similar sets of photographs, along with surveillance video from the day of the incident. Ex. C, Follow-Up Reports, August 2 and 17, 2007. Although Saunders and Cadawan each reviewed several hundred photographs, they were also unable to identify the perpetrator. *Id.*

Approximately one month later, on August 30, 2007, Sarwar contacted the detective squad at the 106th Precinct and stated that he had recognized the perpetrator from the wanted poster connected with Plaintiff's homicide and escape charges, which had been shown on a news broadcast the previous day. Ex. C, Follow-Up Report, August 31, 2007. Following this, Sarwar, along with Saunders and Cadawan, who had also seen the broadcast, were brought in to the precinct to identify the perpetrator. *Id.* At the precinct, Tranchina presented Sarwar—but not Saunders or

Cadawan—with a photo array of six photographs, including one of Plaintiff. *Id.* From the photo

array, Sarwar identified Plaintiff as the perpetrator. *Id.*

The photograph of Plaintiff used in the photo array was the same as one of the photographs

on the wanted poster that Sarwar had seen on the news broadcast the previous day. *See* Ex. D,

Photo Array; Ex. E, Wanted Poster, Bates No. 203. Thus, when Tranchina presented Sarwar with

the photo array, it was a foregone conclusion which picture the witness would identify—regardless

of what other pictures were included in the array, Plaintiff's picture, which was fresh in Sarwar's

mind from the wanted poster, would naturally stand out from all others. A jury could conclude that,

under the circumstances, a reasonable officer should have suspected that Sarwar's identification

of Plaintiff in the photo array was improperly influenced by the fact that he had just seen the same

photograph in the unduly suggestive context of a wanted poster. *United States v. Eltayib*, 88 F.3d

157, 166 (2d Cir. 1996) ("A photo array is improperly suggestive if 'the picture of an accused . . .

so stood out from all of the other photographs as to suggest to an identifying witness that [that

person] was more likely to be the culprit.'") (quoting *United States v. Thai*, 29 F.3d 785, 808 (2d

Cir. 1994)).

Tranchina made no effort to ensure that Sarwar's identification of Plaintiff's picture had

not been unduly influenced by having seen the same picture in the context of a wanted poster.

Tranchina did not attempt to refresh Sarwar's memory by showing him the surveillance video (or

images taken therefrom) of the perpetrator, nor did he review the video himself, despite requesting

that a new wanted poster be created using images from the video. Ex. B, Tranchina Dep. 44:6-9;

45:10-46:10. Tranchina also neglected to cross-reference the pages reviewed by Sarwar on July

29, in order to see whether the witness had passed over Plaintiff's photograph when viewed outside

the context of a wanted poster. Ex. B, Tranchina Dep. 107:7-10. In light of the circumstances, a jury could conclude that a reasonable officer in Tranchina's position should have taken extra steps to verify the accuracy of Sarwar's recollection. *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (holding that a jury can find that "failure to make a further inquiry when a reasonable person would have done so [establishes] lack of probable cause.") (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983)).

Tranchina also declined to present Saunders or Cadawan with a photo array, despite their having been present at the precinct and having seen the same news broadcast as Sarwar. Ex. B, Tranchina Dep., 105:12-106:2. Tellingly, Cadawan and Saunders, unlike Sarwar, had expressed uncertainty as to whether the man they saw on the news broadcast was the perpetrator. Ex. C, Follow-Up Report, August 31, 2007. A jury could infer that Tranchina improperly and unreasonably declined to follow up with two of the three witnesses, choosing instead to take the path of least resistance by presenting the photo array only to the witness who had already made up his mind about the picture of Plaintiff included therein.

Following Sarwar's identification of Plaintiff from the photo array, Tranchina ordered a wanted card for Plaintiff. *Id*. On March 11, 2008, Tranchina took Plaintiff into custody, removing him from Rikers Island and taking him to the 106th Precinct in order to place him in a lineup for identification by Sarwar, Saunders, and Cadawan. Ex. C, Follow-Up Report, March 11, 2006.

While Sarwar picked out Plaintiff from the line-up, the other two witnesses did not. *Id.* Cadawan stated that he did not recognize anyone in the line-up and Saunders stated that she was "80% sure" that the perpetrator was another individual in the line-up. *Id.* Despite these conflicting identifications, Tranchina proceeded with another order for Plaintiff's arrest. *Id.* Plaintiff was

arrested and charged the following month and Tranchina had the complaint closed without further investigation of other possible perpetrators. Ex. C, Follow-Up Report, April 24, 2008, Bates No. D-146.

In light of the fact that two of the three witnesses did not identify Plaintiff—and one, in fact, identified someone else—a jury could infer that Sarwar's recollection had been unduly influenced by his previous viewing of Plaintiff's photograph on the wanted poster, which had then been reinforced by Tranchina's inclusion of that same picture in the photo array. Again, a jury could conclude that a reasonable officer in Tranchina's position should have recognized that Sarwar's identification was therefore unreliable and that further inquiry was needed. Tranchina's failure to make such inquiry may lead a jury to find that there was a lack of probable cause. *See Manganiello*, 612 F.3d at 161.

As to malice, the final element of a malicious prosecution claim, the lack of probable cause, tends to indicate that a person set in motion a prosecution without believing in the guilt of the accused, and malice may therefore be inferred. *Arum v. Miller*, 273 F. Supp. 2d 229, 235 (E.D.N.Y. July 25, 2003).

B.    Defendant Officers are Not Entitled to Qualified Immunity, as There Was No Arguable Probable Cause to Arrest or Prosecute Plaintiff

Qualified immunity insulates police officers from liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, … insofar as it was objectively reasonable for such officials to believe, even if mistakenly, that their conduct did not violate such rights." *Richards v. City of New York*, 433 F. Supp. 2d 404, 419 (S.D.N.Y. 2006); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987)

(holding that the availability of qualified immunity depends on whether a "reasonable officer could have believed" his action "to be lawful, in light of clearly established law and the information he possessed.").

The undisputed evidence in the record provides a basis for the finder of fact to conclude that there was an intentional deprivation of a well-established constitutional right of which a reasonable officer would have known—namely, the right not to be arrested without probable cause. *See, e.g., Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("Without a doubt, the right not to be arrested without probable cause is clearly established.").

As explained above, a jury could conclude that it was not objectively reasonable for Tranchina to believe that there was probable cause to arrest or prosecute Plaintiff. Plaintiff was identified as the perpetrator in the robbery only by one of three eyewitnesses; that witness only identified Plaintiff as the perpetrator after seeing his photograph in the highly suggestive context of a wanted poster; Tranchina presented that witness with a photo array that included the very same photograph of Plaintiff as the one on the wanted poster, thus all but ensuring that the witness would choose it; and neither of the two witnesses who were not shown the unduly suggestive photo array were later able to pick Plaintiff out of a line-up. Pl. 56.1 Statement, ¶¶ 2-4, 7-8.

In sum, Tranchina's decision to arrest and initiate the prosecution of Plaintiff on the robbery charges appears to have been characterized by a blatant tendency to ignore inconvenient facts and a willingness to take shortcuts, as when he declined to bother showing a photo array to the eyewitnesses who had not already professed certainty about the photograph they had seen in an unduly suggestive context. Pl. 56.1 Statement, ¶ 8. This kind of approach does not demonstrate that Tranchina was merely mistaken about the existence of probable cause, but that no objectively

reasonable officer would have believed there to be probable cause under the circumstances. Reasonable officers could never disagree as to the lawfulness of such conduct. Therefore, the Court should reject Defendants' Motion for Summary Judgment on qualified immunity grounds.

C.       Plaintiff Can Rebut the Presumption of Probable Cause Created by the Indictment

The presumption afforded a Grand Jury indictment may be overcome by evidence of "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). There is sufficient evidence in the record to overcome the presumption of probable cause created by the grand jury indictment.

To begin, Defendants are mistaken in their assertion that Plaintiff is collaterally estopped from challenging the sufficiency of the grand jury proceeding. The collateral estoppel doctrine only applies where "there … [has] been a full and fair opportunity to contest the decision now said to be controlling. *Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d Cir. 1996) (quoting *Schwartz v. Public Adm'r of Bronx Cnty.*, 24 N.Y.2d 65, 71, 246 N.E.2d 725, 298 N.Y.S.2d 955 (1969)). A full and fair opportunity to contest a decision means that a party must have had the ability to seek appellate review of the adverse decision. *Id.* at 795.

Plaintiff has not had the opportunity to seek appellate review of the criminal court decision cited to by Defendants. Indeed, Plaintiff could never have had such an opportunity, as "[u]nder New York Law, criminal defendants are not entitled to appeal an intermediate order denying dismissal of an indictment." *Fox v. Cnty. of Yates*, 922 F. Supp. 2d 424, 431 (W.D.N.Y. 2013) (citing *People v. Blakley*, 34 N.Y.2d 311, 314, 313 N.E.2d 763, 357 N.Y.S.2d 459 (1974)). When a criminal defendant obtains an adverse interlocutory decision, but is subsequently acquitted, he lacks both the opportunity and incentive to further litigate that order, and thus it does not have

preclusive effect. *Id.*; *see also Johnson*, 101 F.3d at 794-95 (holding that "facts determined in a pretrial suppression hearing cannot be given preclusive effect against a defendant subsequently acquitted of the charges. This rule is predicated on the defendant's lack of an opportunity to obtain review of an issue decided against him."); *Jenkins v. City of New York*, 478 F.3d at 92 (holding that a criminal court's "finding that the lineups were not unduly suggestive was not final for collateral estoppel purposes."); *Taylor v. City of New York*, 03 CV 6477, 2006 U.S. Dist. LEXIS 41429, at \*24 (S.D.N.Y. June 19, 2006) ("After acquittal, defendant no longer had the opportunity or incentive to appeal the results of the [pretrial suppression] hearing. Thus, it cannot be said that he had a 'full and fair' opportunity to litigate the issue. … Without this element, collateral estoppel does not exist and a defense of collateral estoppel fails.").

As the decision sustaining Plaintiff's indictment was an interlocutory criminal court decision, and as Plaintiff was later acquitted, he never had the full and fair opportunity to litigate the decision, and thus the decision can have no preclusive effect. Plaintiff is therefore not collaterally estopped from challenging the sufficiency of the indictment.

Plaintiff has alleged, and the evidence in the record supports, sufficient facts for a jury to find that the presumption created by the grand jury indictment should be overcome. Specifically, there is evidence of police conduct undertaken in bad faith on the part of Tranchina. As described above, Tranchina's decision to rely on a witness identification that arose from an unduly suggestive identification procedure, while conveniently ignoring the contradictory identifications made by the other eyewitnesses, indicates an absence of good faith in the discharge of his duties. Given the clearly problematic context of Sarwar's identification of Plaintiff, coupled with the failure of the other two eyewitnesses to identify the Plaintiff, a reasonable officer in Tranchina's position would

have made further inquiry. Tranchina's failure to do so is sufficient evidence to overcome the presumption created by the grand jury indictment. *See Haynes v. City of New York*, 29 A.D.3d 521, 523 (2d Dept. 2006) ("The presumption may also be overcome by a showing that the police failed to make further inquiry when a reasonable person would have done so and that failure may be evidence of lack of probable cause to arrest.") (internal quotations omitted). Thus, Plaintiff has demonstrated that there is sufficient evidence to overcome the presumption of probable cause created by the grand jury indictment.

D.     Defendants Have Prevented Plaintiff From Timely Naming Tranchina as a Defendant

Plaintiff concedes that, to his knowledge, Shapiro had no personal involvement in the robbery arrest or investigation (though he notes that Shapiro and Tranchina have given conflicting accounts regarding whether they worked together on the arrest or investigation; *see* Pl. 56.1 Statement, ¶¶ 6, 10, and 12. The robbery arrest and investigation were instead conducted by Detective Tranchina, who is not presently named as a defendant.

However, Plaintiff respectfully submits that this action should not be dismissed, as he was prevented from discovering Tranchina's involvement, and thus from naming him as a defendant, due to Defendants' intransigence and strategic delay. Plaintiff should be given the opportunity to cure the resulting defects in his Complaint by amending to add Tranchina as a defendant. Plaintiff should not be penalized "for [d]efendants' obstruction of [plaintiff's] counsel's diligent efforts to determine the identities of the 'Doe' officers." *Archibald v. City of Hartford,* 274 F.R.D. 371, 382 (D. Conn. 2011).

Defendants have used dilatory tactics from the outset of this action. Plaintiff filed the Complaint on September 5, 2015, within the statute of limitations for Plaintiff's malicious

prosecution claim. *See* Doc. No. 1. Defendants delayed in responding to the Complaint and, after several extensions of time, finally filed a motion to dismiss on February 26, 2016. *See* Doc. No. 17. Plaintiff promptly filed an Amended Complaint, mooting the motion to dismiss, on March 18, 2016. *See* Doc. No. 20.

Defendants subsequently neglected to respond to the Amended Complaint in a timely fashion, thus compelling the Court to issue an order directing Defendants to answer the Amended Complaint by May 27, 2016. *See* Electronic Order of May 23, 2017 (no Doc. No.) ("Defendants have not sought an extension of time to respond to the Amended Complaint, which was filed and served on March 18, 2016; thus their response is long overdue."). Defendants requested a further extension, to which Plaintiff consented, and Defendants finally answered the Amended Complaint on June 3, 2016. *See* Answer, Doc. No. 25.

Though Tranchina had been identified by Defendants as a potential witness in their June 30, 2016 Initial Disclosures, the extent of Tranchina's involvement was unknown to Plaintiff. The Initial Disclosures also stated that any communication with an NYPD employee regarding this matter "should be made through counsel." Ex. F, Def. Initial Disclosures. Plaintiff first made efforts to depose Tranchina in September 2016, but despite repeated overtures by Plaintiff's counsel, counsel for Defendants did not produce Tranchina for a deposition until December 23, 2016, after a contested motion to quash the third-party subpoena. *See* Order Denying Motion to Quash, Dec. 13, 2016, Doc. No. 44 ("In light of the apparent importance of Detective Tranchina's testimony to plaintiff's claims, as well as plaintiff's efforts since as early as September 14, 2016 to depose Tranchina, the Court will also permit his deposition to go forward despite the expiration of discovery."). Defendants contested Plaintiff's right to depose Tranchina despite knowing that the

conduct and occurrences set out in the Complaint were in connection to Tranchina, purposefully delaying Plaintiff's ability to discover the identity of an additional defendant.

As Tranchina's deposition testimony later revealed, Defendants had also improperly withheld relevant documents, including some that were specifically responsive to earlier requests. *See, e.g.*, Ex. B, Tranchina Dep., 56:4-20; 41:19-43:6. After Defendants refused to produce these additional documents, the Court ordered Defendants to produce copies of Tranchina's memobook entries, as these documents were responsive to earlier discovery requests. Minute Order of Jan. 31, 2017, Doc. No. 53. Unfortunately, by delaying Tranchina's deposition beyond the close of the discovery period, Defendants were able to deny Plaintiff the opportunity to timely request other additional documents that were revealed to exist by Tranchina's testimony. *See id.* As a result, Plaintiff was denied access to highly relevant documents, such as the 106th Precinct's case folder and additional surveillance video of the robbery, which he would have been able to discover had Defendants not prevented him from taking Tranchina's deposition within the discovery period. *See* Exhibit G, Plaintiff's Supplemental Document Requests. Given Defendants' role in preventing Plaintiff from conducting essential discovery, summary judgment is inappropriate at this time. "[I]t is only a rare case in which summary judgment may be granted against a plaintiff who has not been permitted to conduct discovery." *see Halebian v. Berv*, 869 F.Supp.2d 420, 438 (S.D.N.Y. 2012) (citing *Hellstrom v. U.S. Dep't of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir. 2000)).

Plaintiff could not have ascertained Tranchina's identity as a proper defendant until he was ultimately compelled to testify as his deposition. *See, e.g.*, *Morales v. County of Suffolk*, 952 F. Supp. 2d 433, 435 (E.D.N.Y. 2013) (granting plaintiffs leave to amend where they had asserted that they could not have ascertained potential party's identity until after he had testified). On

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

15

January 9, 2017, less than one month after Tranchina's deposition testimony revealed that he was, in fact, a proper defendant, Plaintiff promptly requested leave to amend. *See* Letter Motion to Amend, Doc. No. 46; *see also Morales*, 952 F. Supp. 2d at 435 (holding that plaintiff did not unduly delay where they had moved to amend within one month of deposing the potential party).

Defendants opposed Plaintiff's request to amend, arguing that it was futile because the statute of limitations had already run and that Plaintiff could not satisfy the relation-back test of Fed. R. Civ. P. 15(c). *See* Response to Letter Motion to Amend, Doc. No. 47. In support of this proposition, Defendants relied on *Barrow v. Wethersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1996), which held that a plaintiff's lack of knowledge of the identity of a John Doe Defendant does not constitute a "mistake" for purposes of Fed. R. Civ. 15(c). However, there is an "exception to the ruling in *Barrow* in situations where the defendants withheld identifying information or unreasonably delayed in producing such information." *Feliciano v. County of Suffolk*, CV 04-5321, 2013 U.S. Dist. LEXIS 44946, at *31 (E.D.N.Y. Mar. 28, 2013); *see also Archibald,* 274 F.R.D. at 381-82 (granting leave to amend where defendant's counsel "completely rebuffed or substantially delayed" plaintiff's efforts to discover the identities of officers with whom he interacted).

On February 10, 2017, Magistrate Judge Roanne L. Mann issued a Report and Recommendation holding that Plaintiff should not be allowed to amend. Doc. No. 59. Magistrate Judge Mann based this decision on the fact that, while Plaintiff brought this action within the statute of limitations, he did not request discovery until after the statute of limitations had ran. This, however, leads to an absurd and unjust result, in which defense counsel may hinder claims against any John Doe defendant merely by delaying standard discovery protocol until the statute of

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

16

limitations has ended. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) …"). At the very least, because of federal rules governing the timing of discovery, the Magistrate's Recommendation creates an unwritten 21-day shortening of the statute of limitations for any claim involving John Doe officer defendants, as even "Early Rule 34 Requests" cannot be served earlier than 21 days after service of the summons and complaint—creating a trap for civil rights plaintiffs and an easy escape hatch for their persecutors. Fed. R. Civ. P. 26(d)(2). Such a plainly unjust result should not be permitted.

Notwithstanding the Magistrate's Report and Recommendation, the Court has ordered that oral argument on Plaintiff's request to amend will be heard alongside argument on the present Motion for Summary Judgment. Scheduling Order, Doc. No. 62. Plaintiff therefore requests that the Court issue an order pursuant to Fed. R. Civ. P. 56(d), allowing Plaintiff the opportunity to conduct additional discovery and to amend the Complaint to add Tranchina as a defendant. *See* Fed. R. Civ. P. 56(d)(3) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … issue any … appropriate order."); *see also Emigra Group, LLC v. Fragomen, Del Rey, Bernsen & Loewy*, *LLP*, 612 F. Supp. 2d 330, 363 (S.D.N.Y. 2009) ("Rule 56[d] is the safety valve that, when satisfied, prevents the entry of summary judgment against a party where there is good reason to believe that evidence sufficient to defeat the motion for summary judgment exists, but the non-moving party legitimately needs discovery to get that evidence."); *Trebor Sportswear Co. v. The Limited Stores, Inc.,* 865 F.2d 506, 511 (2d Cir. 1989) ("The nonmoving party must have 'had the opportunity to discover information that is essential to his opposition' to the motion for summary judgment.") (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 252, 250 n.5 (1986)). Defendants' dilatory

tactics should not be allowed to deny Plaintiff a remedy for the more than four years that he spent

in incarceration due to Tranchina's actions. *See* Decl. of Kim Richman in Support of Rule 56(d)

Order.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion for Summary Judgment should be denied

as to Plaintiff's claim for malicious prosecution, or in the very least continued to allow Plaintiff to

amend the Complaint to add Detective Tranchina as a defendant. As to the remaining claims,

Plaintiff concedes that his malicious abuse of process and intentional infliction of emotional

distress claims are time-barred, and withdraws his claim for *Monell* liability against the City of

New York.


DATED:   Brooklyn, New York
         April 11, 2017

Respectfully Submitted,

Kim E. Richman
**THE RICHMAN LAW GROUP**
81 Prospect Street
Brooklyn, NY 11201
(718) 705-4579 (telephone)
(718) 228-8522 (facsimile)

*Attorney for Plaintiff*