UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MAXIE DACOSTA,

Plaintiff,

– against –

DETECTIVE FORTUNATO TRANCHINA,
Shield #509, individually and in his official
capacity

Defendants.

MEMORANDUM AND ORDER

15-CV-5174

| Parties | Appearances |
|---------|-------------|
| Maxie DaCosta | **Kim Richman**<br>**Clark A. Binkley**<br>**Javier Osvaldo Hidalgo**<br>The Richman Law Group<br>81 Prospect Street<br>Brooklyn, NY 11201<br>(212)687-8291<br>Fax: (718)228-8522<br>krichman@richmanlawgroup.com |
| Detective Fortunato<br>Tranchina | **Kavin Suresh Thadani**<br>**Daniel G. Saavedra**<br>New York City Law Department<br>Special Federal Litigation Division<br>100 Church Street<br>New York, NY 10007<br>212-356-3534<br>Fax: 212-356-3509<br>kthadani@law.nyc.gov |

**Jack B. Weinstein, Senior United States District Judge:**

# Table of Contents

I.   Introduction .................................................................................................... 2

II.  Facts .............................................................................................................. 4

    A.   Robbery and Identification ................................................................... 4

    B.   Grand Jury Proceedings ....................................................................... 6

       1.   Background ...................................................................................... 6

       2.   Grand Jury Testimony ..................................................................... 6

III. Law ................................................................................................................ 9

    A.   Unsealing Grand Jury Minutes ............................................................ 9

    B.   Summary Judgment Standard ............................................................. 11

    C.   Section 1983 Claim Based on Malicious Prosecution .......................... 11

       1.   Probable Cause ............................................................................... 12

       2.   Qualified Immunity ........................................................................ 16

       3.   Presumption of Probable Cause Created by Grand Jury Indictment .............. 17

       4.   Grand Jury Immunity ..................................................................... 20

       5.   Malice ............................................................................................ 23

IV.  Application of Law to Facts ......................................................................... 24

    A.   Unsealing Grand Jury Minutes .......................................................... 24

    B.   Section 1983 Claim for Malicious Prosecution ................................... 25

       1.   Probable Cause ............................................................................... 26

       2.   Presumption of Probable Cause Created by Grand Jury Indictment .............. 31

       3.   Malice ............................................................................................ 33

V.   Conclusion ................................................................................................... 33

## I.   Introduction

This 42 U.S.C. § 1983 civil rights decision denies summary judgment to the Defendant in

both his capacities, essentially for ethical reasons.  The case seeks compensation from a police

officer of the City of New York ("Defendant"). It rests principally on two rulings: the first allowed relation back to defeat a statute of limitations defense where the City of New York through its attorney, an assistant Corporation Counsel of the City, failed to promptly inform Plaintiff that he had named the wrong police officer as a defendant. *See DaCosta v. City of New York*, No. 15-CV-5174, 2017 WL 5176409, -- F. Supp. 3d -- (E.D.N.Y. Nov. 8, 2017).

The instant memorandum and order addresses the failure of a Detective and an Assistant District Attorney to bring to the grand jury's attention the shaky grounds of the key witness' identification supporting the indictment of Plaintiff. Based on that failure, a civil Section 1983 jury could find that the Assistant District Attorney and Detective colluded to mislead the grand jury with respect to the identification. This is the basis for denying Defendant the defense of the presumption of probable cause created by grand jury indictment.

Ethical responsibilities of municipal corporation counsel and district attorneys to treat opponents fairly is essential if we are to avoid the perversion of justice—civil and criminal. *See, e.g.*, The Innocence Project, Featured Cases, https://www.innocenceproject.org/all-cases (last visited Dec. 1, 2017) (351 cases of individuals exonerated by DNA evidence; many of the cases include misidentifications).

The litigation presents a unique set of circumstances: (1) only one out of three eyewitnesses identified Plaintiff in a lineup; (2) there is evidence of distortive forces on the single eyewitness' identification of Plaintiff; (3) the presentation made to the grand jury did not indicate that two eyewitnesses failed to identify Plaintiff in the lineup; and (4) the grand jury was not apprised of the fact that it was presented with a dubious identification.

The grand jury process—constitutionally protected—is normally *pro forma*. If its procedures are properly followed and result in an indictment, under New York law a plaintiff is

prohibited from pursuing a malicious prosecution claim under Section 1983. In rare circumstances, such as those presented here, a confluence of factors can rebut the general rule that there was probable cause to commence a criminal action.

Defendant's motion for summary judgement on the malicious prosecution claim is denied. There is a genuine dispute as to whether there was probable cause to institute and maintain the criminal action against Plaintiff for robbery and whether the grand jury indictment was sufficiently supported by probable cause.

## II. Facts

### A. Robbery and Identification

On the evening of July 28, 2007, an armed man entered a retail sports store, threatened and assaulted employees, and forcibly removed $4,600 from the cash register. Plaintiff's Response to Defendants' Statement Pursuant to Local Rule 56.1 ("56.1 Stmt.") at ¶ 1, ECF No. 65.

Shortly after the robbery, three of the victims, Mohammad Sarwar, Anita Saunders, and James Cadawan, went to the 106th Police Precinct where they viewed a database of photographs matching the perpetrator's description. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Aug. 2, 2007. They viewed pictures compiled from the 75th, 103rd, 105th, and 106th precincts, but did not identify anyone as the perpetrator. *See Id*. Mr. Sarwar also provided the police with a video from the night of the robbery, and a video from the day before which showed a person who he believed to have been the perpetrator. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, July 29.

At the end of that month, on August 29, 2007, Mr. Sarwar was watching the news on television and saw a picture of Plaintiff on a wanted poster related to homicide and escape

accusations—completely independent of the robbery charge and robbery identification that are the basis of the instant 1983 civil suit—that had been leveled against him. 56.1 Stmt. at ¶¶ 2, 3. Mr. Sarwar believed that Plaintiff depicted in the wanted poster was the person who robbed the store the previous month; he contacted the 106th Precinct Detective Squad. *Id.*

A day later, he met with Detective Fortunato Tranchina, the lead detective responsible for investigating the robbery—not the homicide or escape alluded to in the wanted poster. *Id.* at ¶¶ 4-5. Mr. Sarwar was shown a photo array at the precinct and again identified Plaintiff. *Id.* at ¶ 7. The photo array contained a photograph from the wanted poster that Mr. Sarwar had seen the day earlier—the same photograph that prompted him to come forward to the police. *Id.* Two other eyewitness-victims of the robbery were also present, Ms. Saunders and Mr. Cadawan. *Id.* They had seen the same wanted poster that Mr. Sarwar saw the prior day, but they expressed uncertainty about whether Plaintiff, as depicted in the photo, was the perpetrator of the robbery. *Id.*

On March 11, 2008, Mr. Sarwar, Ms. Saunders, and Mr. Cadawan returned to the precinct to view a lineup. *Id.* at ¶ 8. Mr. Sarwar identified Plaintiff in the lineup. *Id.* Ms. Saunders and Mr. Cadawan viewed the lineup, but did not identify Plaintiff. *Id.* Ms. Saunders identified a different person with 80% confidence and Mr. Cadawan told the police that he did not recognize any of the people in the lineup. *Id.*

On April 24, 2008, Detective Tranchina arrested Plaintiff and signed a criminal court complaint charging him with two counts of Robbery in the First Degree. *Id.* at ¶¶ 9, 11.

## B. Grand Jury Proceedings

### 1. Background

At a hearing held on this motion for summary judgment on October 23, 2017, it became clear that despite Defendants' reliance on a presumption of probable cause created by the indictment, neither Plaintiff nor the detective Defendant had inspected the grand jury minutes. *See* Oct. 23, 2017 Hr'g Tr. 33:18-12.  The court ordered the Corporation Counsel to provide it with the grand jury minutes for *in camera* review.  *See* Oct. 24, 2017 Order, ECF. No. 81.  Without objection, the Queens County District Attorney's Office provided the court with the minutes.  *See* Defs.' Ltr. of Oct. 27, 2017, ECF No. 82.

While grand jury proceedings are ordinarily kept secret, for the reasons discussed *Infra* in Parts III(A) and IV(A) the portions of the minutes discussed in this memorandum are unsealed. In accordance with the court's November 15, 2017 order, the parties should be prepared to discuss at an *in limine* hearing whether the grand jury minutes should be unsealed in their entirety.  Nov. 15, 2017 Order, ECF No. 86.

### 2. Grand Jury Testimony

On May 14, 2008 a grand jury was convened to determine whether there was probable cause to indict Plaintiff on robbery charges.  *See* Grand Jury Hearing Transcript, *People v. DaCosta*, Ind. No. 1210-08 (May 14, 2008) ("Grand Jury Hr'g Tr.").  Three witnesses, all of whom have previously been identified in the present civil litigation, testified before the grand jury—Anita Saunders, Mohammad Sarwar, and Detective Fortunato Tranchina.  *Id.*

Ms. Saunders testified to the basics facts of the robbery.  *Id.*  She also testified that the perpetrator of the robbery pulled his "shirt above his nose [], so his lower face was partially covered," but he was not wearing a mask.  *Id.* 7:15-23.  Ms. Saunders was not asked to inform

the grand jury that in a lineup she identified a "filler"—not Plaintiff—with 80% confidence, as the robbery perpetrator. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Mar. 11, 2017.

Mr. Sarwar then testified to his experience during the robbery. He, too, viewed the perpetrator's face from the nose up. Grand Jury Hr'g Tr. 16:1-25. At one point, while there was a gun to Mr. Sarwar's head, the perpetrator dropped his mask revealing his entire face:

> **[Prosecutor]**: During this incident did there come a time that that -- how he covered his face changed?
>
> **[Mr. Sarwar]**: Yes. There was a point where he had like a du-rag on his nose. When he held me he grabbed me from the shirt and at that time he let go. It was like maybe a few seconds where his mask was, you know, whatever. He had dropped.
>
> **[Prosecutor]**: During that time could you see his whole face?
>
> **[Mr. Sarwar]**: Yeah, little I was able to see.
>
> **[Prosecutor]**: For that moment or moments?
>
> **[Mr. Sarwar]**: Yeah at the same time there was a gun on my head also.
>
> **[Prosecutor]**: But other than that, other than having a gun to your head you were able to see him clearly?
>
> **[Mr. Sarwar]**: Yeah.
>
> **[Prosecutor]**: Was there anything blocking your view of him?
>
> **[Mr. Sarwar]**: Just a gun.
>
> **[Prosecutor]**: What was the gun between his face and you?
>
> **[Mr. Sarwar]**: He was like putting it right here and come over. Then he just pushed me down the stairs. That's it.
>
> **[Prosecutor]**: Do you have an opportunity to, during that time to see him without the gun or anything blocking your view?
>
> **[Mr. Sarwar]**: I had little bit. Maybe two seconds.

*Id.* 18:13-19:12. Mr. Sarwar also testified to seeing the perpetrator later "in the video." *Id.*

20:19-21. This seemed to be a reference to the video Mr. Sarwar brought to the attention of

police that showed a person he believed to be the perpetrator who had entered the store the day

before the robbery. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, July 29.

About his later identifications of Plaintiff, Mr. Sarwar testified before the grand jury that

while watching the news, he saw a picture of a person who he believed to be the perpetrator of

the robbery. *Id.* 21:2-9. He brought this to the attention of Detective Tranchina. *Id.* 21:19-21.

Mr. Sarwar's final portion of testimony related to his identification of Plaintiff at the

lineup. He testified:

> **[Prosecutor]**: When you looked at that lineup did you recognize any of the people one through five or six?
>
> **[Mr. Sarwar]**: I pick number two. That was the number I picked.
>
> **[Prosecutor]**: Number two that you picked did you recognize that person?
>
> **[Mr. Sarwar]**: Yeah, it was.
>
> **[Prosecutor]**: Where was the person from?
>
> **[Mr. Sarwar]**: *From the picture in the* -- from the robbery.
>
> **[Prosecutor]**: Did it appear to be the same person that robbed the store?
>
> **[Mr. Sarwar]**: Yeah.
>
> **[Prosecutor]**: Did it appear to be the same person you saw in the picture on New York 1?
>
> **[Mr. Sarwar]**: The eyes definitely. Yes.

*Id.* 22:18-23:6 (emphasis added). Note that he first said "[f]rom the picture" and then

"corrected" himself to say it was from his recollection of the robbery. Mr. Sarwar did not

present testimony about his identification of Plaintiff in the photo array.  *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Aug. 31, 2017.

Detective Tranchina was the final witness to testify before the grand jury.  He explained that Mr. Sarwar identified Plaintiff in the lineup.  Grand Jury Hr'g Tr. 25:11-19.  What he did not tell the grand jury was that Ms. Saunders viewed the same lineup and identified a different individual and that another eyewitness, James Cadawan, viewed the lineup but could not identify any individual, and that the picture they saw on television in the wanted poster was of a suspect in an escape and homicide, not in the robbery.  *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Mar. 11, 2017.

Plaintiff was indicted on May 15, 2008 by the grand jury for one count of Robbery in the First Degree, one count of Robbery in the Second Degree, two counts of Assault in the Second Degree and one count of Criminal Possession of a Weapon (in the robbery) in the Fourth Degree. 56.1 Stmt. at ¶ 13.  On September 3, 2008, a criminal court judge determined that the indictment was not defective.  *Id*. at ¶¶ 14-15.

On September 6, 2012, the robbery charges were dismissed.  *See* Certificate of Disposition, ECF No. 67, Exh. A, Oct. 1, 2015.  The dismissal was apparently based on a videotape in the possession of the police, which showed a person other than Plaintiff as the robber.  *See* Pl.'s Mem. L. Summ. J. at 3.

**III.    Law**

**A.  Unsealing Grand Jury Minutes**

As one district court has noted, "in certain circumstances, Second Circuit doctrine can make access to grand jury minutes a virtual prerequisite to a successful malicious prosecution claim."  *Frederick v. New York City*, No. 11 CIV. 469 JPO, 2012 WL 4947806, at *8 (S.D.N.Y.

Oct. 11, 2012).  The presumption of probable cause created by an indictment, "[i]n effect, []

requires plaintiffs to prove what happened before the grand jury to negate probable cause." *Id.* at

*9; *see also Supra* Part III(C)(3).  "[D]enial of access to grand jury minutes can result in possible

injustice if the rights of parties are effectively destroyed by inability to view key evidence." *Id.*

at *7 (internal quotation marks omitted).

The United States Supreme Court decision in *Douglas Oil Co. of Cal. v. Petrol Stops

Nw.*, 441 U.S. 211 (1979) provides the framework for a district court's analysis of the need to

unseal grand jury minutes.  "[D]isclosure is appropriate only in those cases where the need for it

outweighs the public interest in secrecy . . . . [A]s the considerations justifying secrecy become

less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in

showing justification." *Id.* at 223.

To unseal the minutes, there must be a showing of "particularized need that outweighs

the need for secrecy." *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (internal

quotation marks omitted).  One recognized reason for unsealing grand jury minutes is to "avoid a

possible injustice in another judicial proceeding." *Douglas Oil*, 441 U.S. at 222; *see also* Fed. R.

Crim. P. 6 (e)(3)(E)(i) ("The court may authorize disclosure—at a time, in a manner, and subject

to any other conditions that it directs—of a grand-jury matter . . . preliminarily to or in

connection with a judicial proceeding.").

The reasons the law prefers maintaining grand jury secrecy include:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to
insure the utmost freedom to the grand jury in its deliberations, and to prevent
persons subject to indictment or their friends from importuning the grand jurors;
(3) to prevent subornation of perjury or tampering with the witnesses who may
testify before [the] grand jury and later appear at the trial of those indicted by it; (4)
to encourage free and untrammeled disclosures by persons who have information
with respect to the commission of crimes; (5) to protect innocent accused who is

exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*Douglas Oil*, 441 U.S. at 219 n.10 (internal quotation marks omitted).

In order to avoid injustice while balancing the value of grand jury secrecy, "courts have treated a showing of likely success in defeating the presumption of probable cause as a precondition of access to grand jury minutes." *Frederick*, 2012 WL 4947806, at *9 (citing cases). Other courts have looked to the availability of other sources to learn about grand jury testimony including "interviews, depositions, subpoenas and trial testimony." *Palmer v. Estate of Stuart*, No. 02 CIV.4076 LTS GWG, 2004 WL 2429806, at *3 (S.D.N.Y. Nov. 1, 2004); *but see* Fed. R. Evid. 1002-1004 (codifying the best evidence rule); 6 Margret Berger, *et al.*, Federal Evidence § 1002.03 (Joseph M. McLaughlin, ed. 2d ed. 2006) (noting the greater reliability and accuracy of an original as compared with after-the-fact oral testimony).

**B.  Summary Judgment Standard**

Summary Judgement is appropriate when, "after construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact." *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009). The non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted).

**C.  Section 1983 Claim Based on Malicious Prosecution**

To prevail on a Section 1983 claim for malicious prosecution, "a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted). A plaintiff must prove four elements to support a malicious prosecution claim: "(1) the initiation or continuation of a criminal proceeding against

plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id*. Initiating a criminal proceeding against a person without probable cause coupled with a deprivation of liberty is a Fourth Amendment violation. *See Murphy v. Lynn*, 118 F.3d 938, 944-47 (2d Cir. 1997).

### 1. Probable Cause

Probable cause, an element of a malicious prosecution claim, is "evaluated on the totality of the circumstances." *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007). "If officers arrest an individual based on a mistaken identification, that arrest is still constitutionally valid if: (1) the police have probable cause to arrest the person sought; and (2) the arresting officer reasonably believed that the arrestee was that person." *Sanchez v. Port Auth. of New York & New Jersey*, No. 08-CV-1028 RRM CLP, 2012 WL 1068078, at *5 (E.D.N.Y. Mar. 29, 2012) (citing *Hill v. California*, 401 U.S. 797, 802–803 (1971)).

In a malicious prosecution case, the timing of a probable cause determination is crucial. The Court of Appeals for the Second Circuit has explained that

> [u]nder New York law, even when probable cause is present at the time of arrest, *evidence could later surface which would eliminate that probable cause . . . .* In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact . . . . The New York Court of Appeals has noted that *the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause*.

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996) (citations and quotation marks omitted) (emphasis added).

In *Crews v. Cty. of Nassau*, 996 F. Supp. 2d 186 (E.D.N.Y. 2014), for example, the plaintiff was selected from a photo array by the victim. *Id*. at 204-05. Based on this identification, the court first held that there was probable cause to *arrest* the plaintiff. *Id*. at 205-

07. The officer in charge of the case later learned that the plaintiff had been in jail at the time the crime occurred, but he did not seek to end the prosecution. *Id*. at 208. The court held that "the probable cause that existed based upon the [] identification [was] vitiated by the exculpatory evidence that plaintiff had been in jail at the time of the robbery." *Id*. Although there was probable cause at one point, it could no longer be relied upon in the face of exculpatory evidence.

Probable cause to arrest an individual may generally be based upon information from a "putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). Where a plaintiff claims that the eyewitness identification was tainted by police procedure the relevant inquiry is "whether the flaws in the lineup procedures increased the risk of a misidentification to an extent that the resulting identification no longer supports the requisite probability that the suspect has perpetrated a crime." *Williams v. City of New York*, No. 10-CV-2676 JG LB, 2012 WL 511533, at *7 (E.D.N.Y. Feb. 15, 2012); *Jenkins*, 478 F.3d at 93 (holding that a lineup procedure was "so defective that probable cause could not reasonably be based upon it").

New York law has recently been reformed, effective July 1, 2017, with respect to photo array procedure. Although not retroactive, the new rule is relevant in evaluating photo array procedures used in identification cases. *See* N.Y. Crim. Proc. L. § 60.25 (2017 McKinney). New York now allows in-court testimony about a photo array, but only if the observation is made under a "blind or blinded procedure," defined as:

> a "blind or blinded procedure" is one in which the witness identifies a person in an array of pictorial, photographic, electronic, filmed or video recorded reproductions under circumstances where, at the time the identification is made, the public servant administering such procedure: (i) does not know which person in the array is the suspect, or (ii) does not know where the suspect is in the array viewed by the witness.

*Id.*

This new rule demonstrates a strong policy determination that a blind or blinded procedures provide significant safeguards when viewing photo arrays. *See* Jeff Storey, *Reforms in State Budget Aim to Prevent Wrongful Conviction*s, N.Y. L. J. (April 14, 2017) (explaining that this new provision is a result of an agreement reached between the New York State Bar Association, the Innocence Project, and the District Attorneys Association and is expected to bring about a cultural shift); *see also* Sally Q. Yates, U.S. Dep't of Justice Memo, *Eyewitness Identification: Procedures for Conducting Photo Arrays* (Jan. 6, 2017) (instructing federal law enforcement officials to follow a blind or blinded procedure). A blind procedure was not used in the present case.

Victim identifications, although often sufficient to support probable cause, cannot always be relied upon by police officers; if there are specific reasons to doubt the eyewitness, then the officer may not rely wholly upon the identification. *See Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) ("[T]here is a caveat to the general rule: victim complaints ordinarily establish probable cause absent circumstances that raise doubts as to the victim's veracity." (internal quotation marks omitted)); *Sankar v. City of New York*, 867 F. Supp. 2d 297, 306-07 (E.D.N.Y. 2012) (finding that the police officer did not have probable cause to arrest and "should have investigated further" where the victim-witness had an axe to grind with the arrestee and thus could not be trusted).

Courts have been somewhat mixed about whether conflicting identifications can negate probable cause. Many courts have held that when not all of the victims of a crime identify an accused person in a lineup, probable cause is not vitiated. *See, e.g.*, *Radin v. City of New York*, No. 14CV7347NGRLM, 2016 WL 3982463, at *3 (E.D.N.Y. July 22, 2016) ([T]hat some

victims did not identify plaintiff does not vitiate the probable cause that resulted from the identifications by [others].").

In a recent case decided by the Court of Appeals for the Second Circuit, conflicting eyewitness identifications was viewed as a factor that cut against a finding of probable cause when the one identification was of limited value. *See Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017) ("Setting aside the inconclusive identification by Park, who was the police and prosecution's sole identification witness against [the plaintiff], the Defendants' remaining [identification] *evidence is too gossamer* to support the conclusion that, as a matter of law, there was probable cause to arrest. There was no video of the attack on Lee and Shin; *none of the five eyewitnesses other than Park who were questioned were able to identify [the plaintiff] as an assailant*; and no forensic evidence tying [the plaintiff] to the attack was ever produced." (emphasis added)).

"Study after study demonstrates that eyewitness recollections are highly susceptible to distortion by postevent information or social cues." *Perry v. New Hampshire*, 565 U.S. 228, 264, (2012) (Sotomayor, J. dissenting). One such documented effect occurs when an eyewitness views a photo of a suspect—whether innocent or guilty—multiple times. The Supreme Court long ago recognized this effect, noting that a witness shown a photo of an innocent person "is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification." *Simmons v. United States*, 390 U.S. 377, 383-84 (1968).

Social science has recognized this distorting effect. *See* Gabriel W. Gorenstein & Phoebe C. Ellsworth, *Effect of Choosing an Incorrect Photograph on a Later Identification by an*

*Eyewitness*, 65 J. of Applied Psychol. 616 (1980) (documenting the effect of seeing an image on a subsequent identification).

> Witnesses who encountered an innocent person's photo in an initial identification procedure were more likely to misidentify a different photo of him in a second procedure even if they did not misidentify him in the first procedure, but the effect is especially strong if they also misidentified the person in the first procedure.

Gary L. Wells & Deah S. Quinlivan, *Suggestive Eyewitness Identification Procedures and the Supreme Court's Reliability Test in Light of Eyewitness Science: 30 Years Later*, 33 Law & Hum. Behav. 1, 8 (2009).

Another well-known distortive effect on eyewitness identifications is "weapon focus." As explained by the New York Appellate Division, First Department, "[w]eapon focus is the phenomenon which occurs when, during the course of a crime, a witness is exposed to a weapon, and the witness focuses his or her attention on the weapon and not on the perpetrator's face, which allegedly impairs the ability of the witness to make a subsequent identification of the perpetrator." *People v. LeGrand*, 94 A.D.3d 99, 103 (N.Y. App. Div. 2012). The *presence of a weapon has been shown by researchers to have a statistically significant negative effect on eyewitness identification. See* Nancy Mehrkens Steblay, *A Meta-Analytic Review of the Weapon Focus Effect*, 16 Law & Hum. Behav. 413 (1992); *see also Young v. Conway*, 698 F.3d 69, 81 (2d Cir. 2012) (quoting Steblay and also noting that "it is human nature for a person toward whom a [weapon] is being pointed to focus h[er] attention more on the [weapon] than on the face of the person pointing it" (alterations in original)).

### 2.  Qualified Immunity

Pursuant to the doctrine of qualified immunity, a police officer may still avoid liability even if his actions did not conform to constitution standards where:

> (1) his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act.

*Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). In determining whether an officer is entitled to qualified immunity for a probable cause determination, the court must decide whether the officer arguably had probable cause. *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Id.* (quoting *Walczyk v. Rio,* 496 F.3d 139, 163 (2d Cir. 2007)).

### 3. Presumption of Probable Cause Created by Grand Jury Indictment

Under New York law, "[o]nce a suspect has been indicted . . . the law holds that the Grand Jury action creates a presumption of probable cause." *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983). This presumption may only be overcome by demonstrating that the "police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in bad faith." *Id.* at 82-83. A "failure to pursue the investigation is not the equivalent of fraud or the suppression of evidence . . . [and] variations in the witnesses' testimony [do not] prove perjury. *Id.* at 83.

On numerous occasions, courts have applied the presumption of probable cause created by the indictment despite the fact that potentially exculpatory evidence was withheld from the grand jury. *See, e.g.*, *Williams v. City of New York*, No. 02 CIV 3693(CBM), 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23, 2003), *aff'd*, 120 F. App'x 388 (2d Cir. 2005) (stating that withholding exculpatory evidence from the grand jury, including that "officers at the scene did

not identify Williams in a photo display falls short of the required showing of fraud, perjury, or bad faith to overcome the presumption of probable cause."); *O'Brien v. City of Yonkers*, No. 07-CV-3974 KMK LMS, 2013 WL 1234966, at *16 (S.D.N.Y. Mar. 22, 2013) (stating that the failure to investigate and present to the grand jury inconsistencies in the case against the plaintiff did not rebut the presumption of probable cause).

Where there are competing accounts of events, there is a "competing testimony plus" standard to assess whether a plaintiff has sufficiently rebutted the presumption of probable cause. *Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010). The Court of Appeals for the Second Circuit has looked "beyond a simple conflict of stories or mistaken memories" and scrutinized whether there is corroboration of an account. *Boyd v. City of New York*, 336 F.3d 72, 77 (2d Cir. 2003).

Although the presumption of probable cause is "burdensome" to plaintiffs, "these barriers to a malicious prosecution plaintiff's recovery are not insurmountable." *Torres v. Jones*, 26 N.Y.3d 742, 761 (N.Y. 2016).

Two recent cases, one from the New York Court of Appeals and one from the Court of Appeals for the Second Circuit, have expounded upon the presumption created by a grand jury indictment. In a 2016 case, *Torres v. Jones*, the New York Court of Appeals held that the presumption of probable cause created by a grand jury indictment may be rebutted when an unreliable confession is presented to the grand jury. 26 N.Y.3d at 765-69. In *Torres*, according to the plaintiff, police officers wrote a confession for the plaintiff and had him sign it. *Id*. at 765-67. The court emphasized that this confession conflicted with the physical evidence and that the police should have recognized its unreliability on this basis. *Id.* at 766-67. It held:

> [b]ecause evidence that a police officer lacked probable cause to believe that the plaintiff committed a crime and provided a falsified confession to prosecutors can

18

rebut the presumption of probable cause arising from an indictment, the evidence here that the detectives did not have probable cause to believe that plaintiff had killed Acuna, made a fake confession, attributed the confession to plaintiff and gave it to prosecutors could, if credited, overcome the presumption of probable cause arising from plaintiff's indictment.

*Id*. at 767-68.

In a case similar to the instant one, *Dufort v. City of New York*, the Court of Appeals for the Second Circuit held that the presumption of probable cause created by a grand jury indictment could be rebutted where a dubious identification was presented to the grand jury. 874 F.3d 338, 353 (2d Cir. 2017). In *Dufort*, an eyewitness to a crime selected the plaintiff out of a lineup on the basis of his clothing. The eyewitness recalled that an assailant was wearing a red sweatshirt, and she later viewed a lineup where the only person wearing a red shirt was the plaintiff. *Id*. at 344. This eyewitness identified the plaintiff in the lineup, but only on the basis of his clothing; five other witnesses were unable to identify the plaintiff. *Id.* at 344, 349. "[T]he only direct evidence presented to the grand jury linking [the plaintiff] directly to the attack was [the] eyewitness identification." *Id*. at 353.

The appellate court in *Dufort* first held that the "identification was invalid because it was confined to a lineup so defective that a reasonable officer could not use it to find probable cause." *Id*. The court then continued that "*[m]ore importantly*, the record reflects (and the Defendants do not contest) that the grand jury was simply told that [the eyewitness] identified [the plaintiff] as an assailant *without being informed of the limited nature of [the] identification*." *Id*. (emphasis added). The failure to alert the grand jury to the fact that the eyewitness identified a shirt color—and not a person—was "glaring and easily could have affected the grand jury's decision." *Id*. On this basis, the court held that there was "genuine issue of material fact

regarding whether the Defendants' conduct rose to the requisite level of bad faith to rebut the presumption of probable cause ordinarily created by a grand jury indictment." *Id.*

Taken together, these two appellate court cases stand for the proposition that when evidence of known dubious value—whether a potentially falsified confession, or an unreliable eyewitness identification—is presented to the grand jury, and the grand jury is not apprised of its limited probative value, the presumption of probable cause created by the indictment is rebutted. This is not new law, but a resurgence of the principle articulated by the New York Court of Appeals some thirty-five years ago that the presumption of probable cause is rebutted where "police witnesses have not made a complete and *full statement of facts* either to the Grand Jury or to the District Attorney." *Colon v. City of New York*, 60 N.Y.2d 78, 82-83 (N.Y. 1983). If the law were otherwise, it would be a legal fiction: the presumption of probable cause created by a grand jury indictment is premised on the fact that a regularly operating grand jury's decision based on the facts and circumstances should be respected; but, when the grand jury is not apprised of determinative facts, or is actively misled, this presumption of regularity is no longer operative.

### 4. Grand Jury Immunity

There is an awkward tension between the New York law of malicious prosecution—which puts grand jury conduct in issue through the presumption of probable cause—and Federal Section 1983 law—which holds that witnesses are absolutely immune for grand jury testimony.

In *Rehberg v. Paulk*, the Supreme Court held that a grand jury witness enjoys absolute immunity in Section 1983 suits for her grand jury testimony. 566 U.S. 356 (2012). One of the reasons relied upon by the Court for this rule was that

> [a]llowing § 1983 actions against grand jury witnesses would compromise [] vital secrecy. If the testimony of witnesses before a grand jury could provide the basis

for, or could be used as evidence supporting, a § 1983 claim, the identities of grand jury witnesses could be discovered by filing a § 1983 action and moving for the disclosure of the transcript of grand jury proceedings.

*Id*. at 374.

At the same time, "Second Circuit doctrine can make access to grand jury minutes a virtual prerequisite to a successful malicious prosecution claim." *Frederick v. New York City*, No. 11 CIV. 469 JPO, 2012 WL 4947806, at *8 (S.D.N.Y. Oct. 11, 2012). This might create an odd predicament for district courts that may be compelled to disclose grand jury minutes to avoid injustice under New York law, but are, in a sense, directed to ignore the minutes by the Supreme Court. There are, however, limitations to the absolute immunity doctrine that relieve some of the tension.

A close reading of *Rehberg* and the main precedent it relies on, *Briscoe v. LaHue,* 460 U.S. 325 (1983), reveals "that *Rehberg* does not create a categorical bar to the use of grand jury testimony as evidence against defendants in malicious prosecution suits brought pursuant to § 1983. Rather, . . . that decision prohibits only the use of a witness's *own grand jury testimony against that witness* if he or she subsequently becomes a § 1983 defendant." *Frederick*, 2012 WL 4947806, at *4 (emphasis added); *see also Barone v. United States*, No. 12CV4103 LAK MHD, 2015 WL 6736203, at *2 (S.D.N.Y. Oct. 29, 2015) ("[T]here are situations in which grand jury testimony is admissible despite the *Rehberg* holding—notably, . . . if it is used against a defendant other than the grand jury witness himself.").

The Court of Appeals for the Second Circuit has also recognized an exception to *Rehberg* where the "plaintiff alleges that the officer withheld and falsified evidence in addition to committing perjury before the grand jury." *Coggins v. Buonora*, 776 F.3d 108, 112 (2d Cir.

2015), *cert. denied*, 135 S. Ct. 2335 (2015). The court supplied a test to determine when absolute immunity will bar a suit:

> When a police officer claims absolute immunity for *his* grand jury testimony under *Rehberg*, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony. If the claim exists independently of the grand jury testimony, it is not "based on" that testimony, as that term is used in *Rehberg*. Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under *Rehberg*.

*Id.* at 113 (internal citation omitted) (emphasis added)). In another case, the Court of Appeals for the Second Circuit held that, consistent with *Rehberg*, grand jury testimony could be used for impeachment purposes. *Marshall v. Randall,* 719 F.3d 113 (2d Cir. 2013).

These limitations on *Rehberg* suggest that absolute immunity for grand jury testimony is not absolute immunity from a Section 1983 suit for officers who testify before the grand jury. The question for the court is whether a claim can be made against an officer for malicious prosecution without reference *to his testimony* before the grand jury.

A further question arises about whether a grand jury witnesses' *own testimony* can be used as direct evidence against her to rebut the presumption of probable cause. In *Marshall*, the Court of Appeals for the Second Circuit noted the tension between its holding in *Manganiello v. City of New York*, 612 F.3d 149 (2d Cir.2010)—that an officer's fabricated testimony before the grand jury rebuts the presumption of probable cause created by the indictment—and a broad reading of *Rehberg*, but it did not decide the issue. *Marshall*, 719 F.3d at 117 n.2 (2d Cir. 2013) ("[The parties] recognize this tension in their brief on appeal, but do not advance a completed argument on this basis, so we do not consider how *Rehberg* affects our holding in *Manganiello*.").

Some district courts have suggested that the officer's testimony cannot be used to rebut the presumption of probable cause created by a grand jury indictment. *See, e.g.*, *Peterson v.*

*Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) (holding that the court could not look to an officer's testimony to rebut the presumption of probable cause created by a grand jury indictment after *Rehberg*); *Bonds v. City of New York*, No. 12-CV-1772 ARR MDG, 2014 WL 2440542, at *7 (E.D.N.Y. May 30, 2014) ("Following *Rehberg,* district courts in this Circuit have held that plaintiffs cannot use an officer's allegedly false grand jury testimony to rebut the presumption of probable cause arising from the indictment.").

The analysis in the Court of Appeals for the Second Circuit's recent decision in *Dufort*, *see Supra* Part III(C)(3), supports an analysis of grand jury testimony to prevent a miscarriage of justice:

> With respect to the indictment, the record indicates that the only direct evidence presented to the grand jury linking [the plaintiff] directly to the attack was Park's eyewitness identification. As noted earlier, that identification was invalid because it was confined to a lineup so defective that a reasonable officer could not use it to find probable cause. More importantly, the record reflects (and the Defendants do not contest) that the grand jury was simply told that Park identified [the plaintif] as an assailant without being informed of the limited nature of Park's identification. *Detective Marotta [a Defendant] testified that Park viewed [the plaintiff] in the lineup, and Park testified that she picked [the plaintiff] out of the lineup as an assailant, but neither clarified that she identified only his jacket.* Nor was the grand jury informed that [the plaintiff] was the only suspect in the lineup wearing a maroon sweatshirt. Given the critical nature of Park's testimony to the case against [the plaintiff], these omissions were glaring and easily could have affected the grand jury's decision. We thus find that, contrary to the district court's holding, [the plaintiff] has raised a genuine issue of material fact regarding whether the Defendants' conduct rose to the requisite level of bad faith to rebut the presumption of probable cause ordinarily created by a grand jury indictment.

*Dufort*, 874 F.3d at 353 (emphasis added) (citations omitted).

### 5. Malice

The fourth element of a malicious prosecution claim is malice. *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). This element usually rises or falls with the probable cause determination because "[a] lack of probable cause generally creates an inference

of malice." *Boyd v. City of New York*, 336 F.3d 72, 78 (2d Cir. 2003); *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("[A] lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment.").

## IV. Application of Law to Facts

### A. Unsealing Grand Jury Minutes

A central issue in this case is whether the presumption of probable cause created by the grand jury indictment can be rebutted. *See Supra* Part III(C)(3). This presumption may only be overcome by demonstrating that the "police witnesses have not made a complete and full statement of facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, [or] that they have withheld evidence or otherwise acted in bad faith." *Colon v. City of New York*, 60 N.Y.2d 78, 82 (N.Y. 1983). It is hard to see how Plaintiff can rebut this presumption without knowing what was testified to before the grand jury. *See Frederick v. New York City*, No. 11 CIV. 469 JPO, 2012 WL 4947806, at *8 (S.D.N.Y. Oct. 11, 2012) ("Second Circuit doctrine can make access to grand jury minutes a virtual prerequisite to a successful malicious prosecution claim.").

There is no direct way for Plaintiff to gain access to this information other than unsealing relevant portions of the grand jury minutes. Depositions or other methods of seeking information from those who testified before the grand jury is generally no substitute. The proceeding in front of the grand jury took place nearly a decade ago, and it is the testimony, not the after-the-fact remembrance, that is crucial to the case.

There is scant reason to believe that secrecy is needed for the present minutes: all of the witness who testified were previously identified in the present civil litigation; the witnesses may not face liability for their testimony, *Rehberg v. Paulk*, 566 U.S. 356, 368 (2012); the charges

were long ago dropped by the prosecution; it is well known that Plaintiff was indicted by the grand jury; and there is no fear that this limited decision will create a chilling effect for other grand jury witnesses. "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 222 (1979).

This court first reviewed the grand jury minutes in camera keeping them under seal—a direction that was not objected to by the District Attorney or the Corporation Counsel. *See* Oct. 24, 2017 Order, ECF. No. 81; Defs.' Ltr. of Oct. 27, 2017, ECF No. 82. After reviewing the minutes for relevance and necessity, the court determined that it was necessary to unseal the minutes to the extent discussed in this opinion. The limiting procedure the court has used preserves secrecy to the extent that it is consistent with the compelling need to determine the issue of whether the presumption of probable cause created by the indictment is operative. The court reserves judgment on whether the entirety of the minutes should be unsealed.

### B. Section 1983 Claim for Malicious Prosecution

There are four elements to a malicious prosecution claim: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (internal citations omitted); *see also Supra* Part III(C).

There is no dispute as to the first element. *See* Defs.' Mem. L. Summ. J. at 8 ("Rather, it was another detective, Tranchina, who has not [yet] been named as a defendant [but who was later substituted in the caption for the wrongly named defendant], who conducted the underlying investigation, arrested plaintiff, and signed the criminal court complaint which charged plaintiff

with two counts of Robbery in the First Degree."); *Sankar v. City of New York*, No. 07 CV 4726 RJD SMG, 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012) ("An officer's filing of a sworn complaint is sufficient to satisfy the initiation prong of a malicious prosecution claim."). The second element, termination in Plaintiff's favor, is not disputed. *See* Certificate of Disposition, ECF No. 67, Exh. A, Oct. 1, 2015.

The third and fourth elements of the claim rise or fall together. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("[A] lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment.").

### 1. Probable Cause

Probable cause is "evaluated on the totality of the circumstances." *Jenkins v. City of New York*, 478 F.3d 76, 90 (2d Cir. 2007). Because of absolute immunity for grand jury testimony, the court may not consider Detective Tranchina's testimony in front of the grand jury in this calculus. *See Supra* Part III(C)(4). Without considering this testimony, and construing the facts in the light most favorable to Plaintiff, there was not probable cause to initiate or continue the criminal proceeding against Plaintiff for robbery.

Several key data points inform the probable cause calculation: (1) Mr. Sarwar identified Plaintiff from a wanted poster, for unrelated crimes, that he saw on the news; (2) Mr. Sarwar identified Plaintiff in a photo array that used the same photo as shown in the wanted poster; (3) Mr. Sarwar identified Plaintiff in a lineup; and (4) Ms. Saunders and Mr. Cadawan failed to identify Plaintiff from the same lineup. An eyewitness identification is generally sufficient for probable cause. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000). But there are times where the identification—because of defects in police procedures, *e.g., Jenkins* 478 F.3d at 93, or specific, definable reasons to doubt the complainant, *e.g. Sankar v. City of New York*, 867

F. Supp. 2d 297, 306 (E.D.N.Y. 2012)—cannot alone support probable cause. In a malicious prosecution case, probable cause may vanish if facts surface that undercut the initial probable cause determination. *See Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996).

Mr. Sarwar's initial identification of plaintiff from the wanted poster he saw on the news was likely sufficient for probable cause. Unprompted by the police, Mr. Sarwar came forward to identify Plaintiff as the perpetrator. 56.1 Stmt. at ¶¶ 2, 3. Ms. Saunders and Mr. Cadawan saw the wanted poster, too, and thought Plaintiff may have been the perpetrator, although they expressed doubt. *Id.*

The identification of Plaintiff by Mr. Sarwar in the photo array cannot be used to support probable cause because the procedure was deficient. Under current New York practice, use of a "blind or blinded" procedure is encouraged, i.e., a procedure where the law enforcement officer conducting the photo array does not know which photograph is of the suspect. *See Supra* Part III(C)(1). In this photo array, both Detective Tranchina and *the eyewitness knew* which photograph was the suspect's—the eyewitness brought the photo to the attention of the detective. *See United States v. Eltayib*, 88 F.3d 157, 166 (2d Cir. 1996) ("A photo array is improperly suggestive if the picture of an accused . . . so stood out from all of the other photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit.") (internal citation marks omitted). Showing an eyewitness a photo of a suspect with which he already has familiarity makes it stand out in a way that is unduly suggestive.

It is notable that Mr. Sarwar saw the picture first in the context of a wanted poster involving other crimes, which was likely to suggest to him that Plaintiff was involved in criminal activity. A reasonable officer would have selected a new photo, not the same one used in the wanted poster, when conducting a photo array.

Defendant also relies on the identification by Mr. Sarwar from a lineup on March 11, 2008, about six months after the robbery. *See* Defs.' Mem. L. Summ. J. at 7 ("[T]here was probable cause to arrest and prosecute plaintiff because one of the robbery victims identified plaintiff as the person who committed the robbery in both a photo array and a lineup.").  Plaintiff does not argue that there was a procedural defect with this identification; rather, he argues that in view of the fact that two of the three eyewitnesses did not identify Plaintiff and that Mr. Sarwar's memory had been tainted by the misleading photo array, "a jury could conclude that a reasonable officer in Tranchina's position should have recognized that Sarwar's identification was [] unreliable and that further inquiry was needed." Pl.'s Mem. L. Summ. J. at 9.  This argument has merit.

There are several factors that raise significant doubts about the reliability of Mr. Sarwar's lineup identification, which became apparent from his testimony before the grand jury.  It is also a reasonable inference to draw, on summary judgment, that the infirmaries of Mr. Sarwar's identification were obvious prior to his testimony in front of the grand jury, which vitiates probable cause.

After viewing the wanted poster of Plaintiff several times, it is reasonable to assume that this picture supplanted the image of the robber in Mr. Sarwar's mind.  Before the grand jury, when asked from where he recognized the person he picked out of the lineup, Mr. Sarwar responded "*[f]rom the picture in the*" before censoring himself to state it was "from the robbery."  Grand Jury Hr'g Tr. 22:18-23:6 (emphasis added).  Mr. Sarwar fell victim to the common occurrence of "retain[ing] in his memory the *image of the photograph* rather than of the person actually seen" at the robbery, "reducing the trustworthiness of [his] subsequent lineup"

identification.  *Simmons v. United States*, 390 U.S. 377, 383-84 (1968); *see also Supra* Part III(C)(1).

The reliability of Mr. Sarwar's identification is also questionable because of his focus on the perpetrator's gun.  During an exchange with the prosecutor at the grand jury hearing, Mr. Sarwar repeatedly, without prompting, brought up the fact that a gun obstructed his view of the perpetrator.  Grand Jury Hr'g Tr. 22:18-23:6 ("Yeah at the same time there was a gun on my head also."); *id.* ("[Prosecutor]: Was there anything blocking your view of him? [Mr. Sarwar]: Just a gun."); *id.* ([Prosecutor]: What was the gun between his face and you? [Mr. Sarwar]: He was like putting it right here and come over. Then he just pushed me down the stairs. That's it.").

As the Court of Appeals for the Second Circuit has noted, "it is human nature for a person toward whom a [weapon] is being pointed to focus h[er] attention more on the [weapon] than on the face of the person pointing it."  *Young v. Conway*, 698 F.3d 69, 81 (2d Cir. 2012) (alterations in original).  Mr. Sarwar's focus on the gun—a natural response—casts further doubt on his focus on the perpetrator's face.  *See* Nancy Mehrkens Steblay, *A Meta-Analytic Review of the Weapon Focus Effect*, 16 Law & Hum. Behav. 413 (1992).

Mr. Sarwar's identification must also be viewed in light of the two other eyewitnesses to the robbery who did not identify Plaintiff at the lineup.  While a simple conflict between eyewitness identifications may not negate probable cause, when there is "competing testimony plus," courts have discounted such identifications.  *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010).  The conflict among witnesses, coupled with the hallmarks of an unreliable identification, work together to negate probable cause.  A police officer is not free to ignore facts learned later in an investigation simply because there has been an eyewitness identification.

The instant case is the rare one where there is direct evidence of a distortive effect on an eyewitness' identification. A reasonable officer in this position, a jury could find, would have followed up after learning that the eyewitness identification was unreliable. "The failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir.1996) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).

This is not to suggest that an officer needs to act as a social scientist and disregard every identification where there is a chance that it was distorted because of limitations in human cognition. In this case, there were *direct statements* by the eyewitness that cast serious doubt on his identification, and a reasonable officer should have recognized that.

There were follow-up steps that Detective Tranchina could have, and should have, taken given the unreliability of the eyewitness identification. He could have reviewed the photos first viewed by the eyewitnesses shortly after the robbery to see if Plaintiff's photo was reviewed but not recognized by the eyewitnesses. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Aug. 2, 2007; Tranchina Dep. 107:7-10, ECF. No. 67, Exh. B, Dec. 23, 2016.

More pressingly, he could have reviewed a video retrieved from the store, which showed a person who had come to the store the day before and who Mr. Sarwar had told police was the perpetrator. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, July 29; Tranchina Dep. 44:6-9, 45:10-46:10, ECF. No. 67, Exh. B, Dec. 23, 2016. Mr. Sarwar testified before the grand jury that he saw the robbery perpetrator "in the video," but the grand jury was not shown this video to evaluate whether it was Plaintiff. *Id.* 20:19-21. This video has not been produced on the summary judgment motion, but drawing an inference in Plaintiff's favor, the jury could

conclude that the video did not show Plaintiff, and that the failure to evaluate this exculpatory evidence was intentional.

For these same reasons, a jury could find that it was not objectively reasonable for Detective Tranchina to rely on Mr. Sarwar's identification. If a jury were to draw factual inferences against Detective Tranchina, and find that he knew of and ignored serious issues with the eyewitness' identification and failed to evaluate other potentially exculpatory evidence, then there was not "arguable probable cause" to prosecute Plaintiff. *See Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). Detective Tranchina is thus not entitled to qualified immunity. *See Dufort v. City of New York*, 874 F.3d 338, 354 (2d Cir. 2017) ("We conclude that it would be inappropriate to grant qualified immunity to these Defendants at the summary judgment stage. [The plaintiff] has established a dispute of material fact as to whether the Defendants intentionally withheld or manipulated key evidence during his arrest and prosecution . . . . Such a 'knowing' violation of his Fourth and Fifth Amendment rights would, if proven, be enough to overcome the protection of qualified immunity. Although [the plaintiff] has not produced any direct evidence of a malicious intent on the part of the Defendants, he is not required to do so.").

### 2. Presumption of Probable Cause Created by Grand Jury Indictment

Plaintiff can rebut the presumption of probable cause that was created by the grand jury indictment. Applying the principles stated in *Dufort v. City of New York,* 874 F.3d 338 (2d Cir. 2017) and *Torres v. Jones*, 26 N.Y.3d 742 (N.Y. 2016), the claim cannot be dismissed on the basis of the presumption of probable cause created by the grand jury indictment.

As was the case in *Dufort*, Mr. Sarwar's eyewitness identification was of questionable probative force. *See Supra* Part IV(B)(1). The limited nature of the identification was not made apparent to the grand jury because it was not apprised of the fact that two eyewitnesses failed to

identify Plaintiff as the perpetrator (one of whom testified) and that Mr. Sarwar viewed a photo array that showed *the same photo he had seen from the wanted poster based on other crimes*. Detective Tranchina's testimony did not reference these facts. Without presenting this evidence to the grand jury, a civil jury could find that Detective Tranchina did not make "a complete and full statement of facts either to the Grand Jury or to the District Attorney." *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983).

When it was apparent to Detective Tranchina that the limited questioning was leading him to mislead the grand jury he was at least obligated to bring this to the attention of the Assistant District Attorney. There is no showing that he did so. Given the peculiar circumstances of this case, a civil jury could find that the Assistant District Attorney and detective colluded to mislead the jury.

The presumption of probable cause "is founded upon the premise that the Grand Jury acts judicially and [that] it may be presumed that it has acted regularly." *Id.* When the grand jury is not "informed of the limited nature of [an] identification," it can be inferred that the failure to make a full presentation "affected the grand jury's decision." *Dufort,* 874 F.3d at 353.

The limited nature of Mr. Sarwar's identification, it can plausibly be argued, was made known to the grand jury through his equivocal testimony. But his testimony did not tell the whole story. There was also a video that was not shown to the grand jury, two eyewitnesses who did not identify Plaintiff in a lineup, a suggestive photo array (of which the grand jury was not apprised), and no forensic evidence tying Plaintiff to the robbery. *See id*. at 353 ("Defendants' remaining evidence is too gossamer to support the conclusion that, as a matter of law, there was probable cause to arrest.").

Of particular note was that one of the witnesses who testified before the grand jury in the underlying case did not identify Plaintiff in the lineup, and the grand jury was not apprised of that fact. A grand juror would have been left with the impression that this witness believed Plaintiff to be the perpetrator of the crime, when that was not in fact the case.

### 3. Malice

Based on the apparent lack of probable cause in this case, malice may be inferred on summary judgment. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 131 (2d Cir. 1997) ("[A] lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment.").

## V. Conclusion

Only the grand jury minutes quoted in this opinion are unsealed.

Defendant's motion for summary judgment as to the malicious prosecution claim asserted against Detective Tranchina is denied. Other claims are dismissed in accordance with the court's orders of November 8, 2017, *see* ECF No. 84, and November 15, 2017, *see* ECF No. 86.

The November 15, 2017 order regarding dates for trial and pretrial maters remains in effect. *See* ECF. No. 86.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated:  December 12, 2017
        Brooklyn, New York