UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MAXIE DACOSTA,<br><br>Plaintiff,<br><br>– against –<br><br><br>DETECTIVE FORTUNATO TRANCHINA,<br>Shield #509, individually and in his official<br>capacity<br><br>Defendant. | MEMORANDUM AND ORDER DENYING<br>MOTION FOR RECONSIDERATION<br><br>15-CV-5174<br><br> |

**JACK B. WEINSTEIN, Senior United States District Judge**

Maxie DaCosta

**Kim Richman**
**Clark A. Binkley**
The Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
(212)687-8291
Fax: (718)228-8522
krichman@richmanlawgroup.com

Detective Fortunato
Tranchina

**Kavin Suresh Thadani**
New York City Law Department
Special Federal Litigation Division
100 Church Street
New York, NY 10007
212-356-3534
Fax: 212-356-3509
kthadani@law.nyc.gov

1

# Contents

I. Introduction ........................................................................................................................ 2
II. Factual Background ........................................................................................................... 3
III. Summary of Challenged Opinions .................................................................................... 8
IV. Standard of Review on Motions for Reconsideration ....................................................... 9
V. Relation Back ..................................................................................................................... 9
   A. New York CPLR 203 ....................................................................................................... 9
   B. Federal Rule 15(c)(1)(C) ................................................................................................ 11
   C. Ethics of Government Counsel ...................................................................................... 14
VI. December 12, 2017 Summary Judgment Order ............................................................... 15
   A. Misleading Evidence Before the Grand Jury ................................................................. 15
   B. Applicability of Order .................................................................................................... 17
VII. Manifest Injustice ........................................................................................................... 19
VIII. Conclusion ..................................................................................................................... 20

## I. Introduction

Defendant moves to reconsider the November 8, 2017 Order, ECF No. 84, based partly on ethical considerations; granted to plaintiff was leave to amend the complaint adding Detective Tranchina, as the new defendant, eliminating Detective Shapiro as the original defendant, and holding that the amended pleading relates back to the time of filing of the original complaint.

Tranchina is deemed to have challenged the December 12, 2017 Order, ECF No. 92, predicated on ethical grounds, that denied dismissal of the instant civil suit because the grand jury that indicted the defendant, now plaintiff, was misled.

The defendant's motions are denied. The facts are detailed in the court's original orders. *See DaCosta v. City of New York*, No. 15-CV-5174, 2017 WL 5176409, -- F. Supp. 3d -- (E.D.N.Y. Nov. 8, 2017); *DaCosta v. Tranchina*, No. 15-CV-5174, 2017 WL 6372710, -- F. Supp. 3d -- (E.D.N.Y. Dec. 12, 2017). For the reader's convenience, a reduced version of the facts set forth in the two orders are recounted below.

## II. Factual Background

Plaintiff was accused of three crimes in 2007: homicide, escape, and robbery. He was acquitted by a jury of the homicide and escape. The separate robbery charge was then dismissed. The present civil suit is based on the theory that the police lacked probable cause to bring charges and prosecute plaintiff for the robbery.

The homicide and escape charges are unrelated to the robbery. Oct. 23, 2017 Hr'g Tr. 12:12-20. Plaintiff was accused of committing a murder on July 28, 2007, *id.* 16:12-20, and it was alleged that while in custody for the homicide, under the supervision of Detective David Shapiro, he escaped. *Id.* 9:25-10:6.

The robbery charge that forms the basis of the present civil suit is based on the following facts: on the evening of July 28, 2007, an armed man entered a retail sports store, threatened and assaulted employees, and forcibly removed $4,600 from a cash register. Plaintiff's Response to Defendants' Statement Pursuant to Local Rule 56.1 ("56.1 Stmt.") at ¶ 1, ECF No. 65.

Shortly after the robbery, three of those present, Mohammad Sarwar, Anita Saunders and James Cadawan, viewed at the 106th Precinct photographs matching their description of the perpetrator. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Aug. 2, 2007. The witnesses did not identify anyone. *See Id.*

Mr. Sarwar then provided the police with videos of the robbery. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, July 29. They showed the perpetrator. *Id.*

On August 29, 2007, Mr. Sarwar was watching the news on television; he saw a picture of plaintiff on a wanted poster related to the homicide and escape. 56.1 Stmt. at ¶¶ 2, 3. Believing that plaintiff depicted in the wanted poster was the person who robbed the store the previous month, he contacted the 106th Precinct Detective Squad. *Id.* A day later, he met with

Detective Tranchina, the detective responsible for investigating the robbery (not the homicide or escape alluded to in the wanted poster being investigated by Detective Shapiro). *Id.* at ¶¶ 4-5. Mr. Sarwar was shown a photo array at the precinct by Tranchina and again identified plaintiff as the robber. *Id.* at ¶ 7. The photo array contained a photograph from the wanted poster that Mr. Sarwar had seen on television the day earlier. *Id.*

Two other eyewitness-victims of the robbery, Ms. Saunders and Mr. Cadawan, were present at the showing. *Id.* They had seen the same wanted poster that Mr. Sarwar saw the prior day, but were uncertain about whether plaintiff, depicted in the photo, was the perpetrator of the robbery. *Id.*

On March 11, 2008, Mr. Sarwar, Ms. Saunders, and Mr. Cadawan viewed a lineup. *Id.* at ¶ 8. Mr. Sarwar identified plaintiff as the guilty person. *Id.* Ms. Saunders and Mr. Cadawan did not identify plaintiff. *Id.* Ms. Saunders identified a different person with 80% confidence; Mr. Cadawan told the police that he did not recognize any of the people in the lineup. *Id.*

On April 24, 2008, Detective Tranchina arrested plaintiff—who was already in jail on the homicide and escape charges—and signed a criminal court complaint charging him with two counts of Robbery in the First Degree. *Id.* at ¶¶ 9, 11.

A grand jury was convened on May 14, 2008 to determine whether there was probable cause to indict plaintiff on robbery charges. *See* Grand Jury Hearing Transcript, *People v. DaCosta*, Ind. No. 1210-08 (May 14, 2008) ("Grand Jury Hr'g Tr."). A December 12, 2017 Order unsealed the potions of these minutes recounted in the present memorandum and order.

Three witnesses testified before the grand jury—Anita Saunders, Mohammad Sarwar, and Detective Tranchina. *Id.*

Ms. Saunders testified to the basics facts of the robbery. *Id.* She also testified that the perpetrator of the robbery pulled his "shirt above his nose [], so his lower face was partially covered," but that he was not wearing a mask. *Id.* 7:15-23. She was not asked to inform the grand jury that in a lineup she identified a "filler"—not plaintiff—with 80% confidence, as the robbery perpetrator. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Mar. 11, 2017.

Mr. Sarwar testified before the grand jury to his experience during the robbery. He, too, had viewed the perpetrator's face from the nose up. Grand Jury Hr'g Tr. 16:1-25. At one point, while there was a gun to Mr. Sarwar's head, the perpetrator dropped his mask revealing his entire face. *Id.* 18:13-19:12. Mr. Sarwar was focused on the perpetrator's gun, which obstructed his view of the robber's face.

Mr. Sarwar testified to seeing the perpetrator in a "video." *Id.* 20:19-21. This seemed to be a reference to the video Mr. Sarwar brought to the attention of police that showed a person he believed to be the perpetrator who had entered the store the day before the robbery. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, July 29. About his identifications of plaintiff, Mr. Sarwar testified before the grand jury that while watching the news, he saw a picture of a person who he believed to be the robber. Grand Jury Hr'g Tr. 21:2-9. He brought this to the attention of Detective Tranchina. *Id.* 21:19-21.

Mr. Sarwar's final portion of testimony related to his identification of plaintiff at the lineup. He testified:

> **[Prosecutor]**: When you looked at that lineup did you recognize any of the people one through five or six?
>
> **[Mr. Sarwar]**: I pick number two. That was the number I picked.
>
> **[Prosecutor]**: Number two that you picked did you recognize that person?
>
> **[Mr. Sarwar]**: Yeah, it was.

> [**Prosecutor**]: Where was the person from?
>
> [**Mr. Sarwar**]: *From the picture in the* -- from the robbery.
>
> [**Prosecutor**]: Did it appear to be the same person that robbed the store?
>
> [**Mr. Sarwar**]: Yeah.
>
> [**Prosecutor**]: Did it appear to be the same person you saw in the picture on New York 1?
>
> [**Mr. Sarwar**]: The eyes definitely. Yes.

*Id.* 22:18-23:6 (emphasis added). Note that Mr. Sarwar first said "[f]rom the picture" and then "corrected" himself to say it was from his recollection of the robbery. Mr. Sarwar did not present testimony about his identification of plaintiff from the photo array. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Aug. 31, 2017.

Detective Tranchina was the final witness before the grand jury. He explained that Mr. Sarwar identified plaintiff in the lineup. Grand Jury Hr'g Tr. 25:11-19. What he did not tell the grand jury was that Ms. Saunders viewed the same lineup and identified a different individual, that another eyewitness, James Cadawan, could not identify any individual, and that the picture seen on television in the wanted poster was of a suspect in the homicide and escape, not in the robbery. *See* Complaint Follow Up Report, ECF No. 67, Exh. C, Mar. 11, 2017.

Plaintiff was indicted on May 15, 2008 by the grand jury for one count of Robbery in the First Degree, one count of Robbery in the Second Degree, two counts of Assault in the Second Degree and one count of Criminal Possession of a Weapon (in the robbery) in the Fourth Degree. 56.1 Stmt. at ¶ 13. On September 3, 2008, a criminal court judge determined that the indictment was not defective. *Id.* at ¶¶ 14-15.

After spending several years in jail on the robbery, homicide, and escape charges, plaintiff was tried and acquitted of the homicide and escape. Am. Compl. ¶ 22, ECF No. 20. That same day he was released from jail on his own recognizance. *Id.* at ¶ 23. A month later, on September 6, 2012, the robbery charges were dismissed. *Id.* at ¶ 13.

A memorandum written by the Queens County District Attorney's Office dated July 31, 2012, explained that the robbery charges were dropped because the videotape of the incident—available to the police before the grand jury was convened—showed a person other than the plaintiff to be the robber:

> There is video surveillance of the robbery from which still photos of the perpetrator were developed. The perpetrator does not appear to be the defendant based upon a comparison to his arrest photo of 4-24-06. I also recently tried defendant's murder case and observed him extensively. He does NOT appear to be the same person in the video surveillance or still photos.

Exhibit A at 4 (emphasis in original).

Detective Tranchina was the lead detective on the robbery case, which forms the basis of the instant civil lawsuit. Plaintiff and his counsel were under the mistaken notion that Detective Shapiro, the officer who was involved in the murder investigation, and from whose custody plaintiff allegedly escaped, was in charge of the robbery investigation. *See* Original Compl., ECF No. 1. Plaintiff filed suit on this assumption, and named as individual defendants only Detective Shapiro along with twenty John and Jane Doe officers. *Id.*

Plaintiff believed that Detective Shapiro had orchestrated his arrest for the robbery as payback for his alleged escape. Oct. 23, 2017 Hr'g. Tr. 9:16-10:13. In discovery, plaintiff found no evidence that this theory was true, but learned of the involvement of Detective Tranchina only in the robbery prosecution. *Id.*

### III. Summary of Challenged Opinions

In two separate opinions, this court stated the conclusions now challenged by the present defendant. In the first opinion, dated November 8, 2017: (1) plaintiff was granted leave to amend his complaint to name Detective Tranchina rather than Detective Shapiro as defendant, and (2) the amended pleading was held to relate back to the filing of the original complaint, defeating the statute of limitations defense. Noted was the defendant's dilatory tactics and lack of burden on the new defendant.

The relation back holding was based on three independent legal conclusions: first, the Corporation Counsel, a New York City government entity, had an ethical obligation to inform plaintiff that he had sued the wrong officer. Had the Corporation Counsel fulfilled this obligation, the statute of limitations would not have been in issue. Second, under New York State's CPLR 203, applicable through Federal Rule of Civil Procedure 15(c)(1)(A), the amended pleading related back. Third, the amended pleading related back under Federal Rule of Civil Procedure 15(c)(1)(C).

The second opinion, issued on December 12, 2017, addressed substantive claims. Defendant moved for summary judgment on plaintiff's malicious prosecution claim arguing primarily that (1) there was probable cause to initiate the prosecution against plaintiff, and (2) plaintiff could not overcome the presumption of probable cause created by a grand jury indictment. The court rejected both of these arguments. The sole evidence linking plaintiff to the robbery was one eyewitness identification. The eyewitness identification was of dubious value because (1) the identification had substantial indicia of unreliability, (2) the two other eyewitnesses of the crime failed to identify plaintiff as the robber, (3) the eyewitness was shown a suggestive photo array, and (4) the detective did not consult a video from the store, which

8

would have demonstrated that a person other than plaintiff was the robber. The grand jury was not informed of the poor nature of the identification or of the videotape evidence. A civil petty jury could conclude that Detective Tranchina colluded to mislead the grand jury.

IV. **Standard of Review on Motions for Reconsideration**

"[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

V. **Relation Back**

Defendant makes two arguments supporting his motion for reconsideration of the relation back order. He first contends that the Corporation Counsel could not have alerted plaintiff or Detective Tranchina about the fact that the wrong detective was named because plaintiff's criminal case file was sealed by operation of law, and plaintiff delayed signing a release to unseal the file. Defendant also argues that plaintiff did not make a "mistake" in failing to name Detective Tranchina in the original complaint because plaintiff's criminal defense lawyer was aware that Detective Tranchina was involved in the robbery case in April 2008.

These two points that defendant claims the court overlooked are not specifically tethered to the three independent holdings on relations back. Purported new facts do not alter the court's conclusion.

A. **New York CPLR 203**

Defendant argues that plaintiff "was made aware of [the proper defendant's] identity, while the criminal [robbery] case was pending." Def.'s Mem. in Support of Mot. for Reconsideration ("Mot. for Reconsideration") at 11, ECF No. 87, Ex. 9. He argues that "either

[plaintiff], or his attorneys, or both, purposely chose not to name him as a defendant" in the original complaint. *Id.* at 11-12.

This court "conclude[d] that the New York Court of Appeals . . . would hold that the diligence of the plaintiff is not an aspect of the 'mistake' prong [of CPLR 203], and suing 'John Doe' when a defendant's identity is unknown is a mistake for purposes of the relation back doctrine of CPLR 203." Nov. 8, 2017 Order at 27-28. Even if Detective Tranchina should not have been substituted for Detective Shapiro, as defendant seemed to suggest, CPLR 203 would still be applicable.

Under the law of the case, if plaintiff deliberately omitted Detective Tranchina, the proper defendant, to gain a tactical advantage, a relation back would not have been granted. *See id.* at 19; *see also Buran v. Coupal*, 661 N.E.2d 978, 983 (N.Y. 1995) ("This is not to say, however, that removing the excusability requirement from the third prong would prevent a court from refusing to apply the doctrine in cases where the plaintiff omitted a defendant in order to *obtain a tactical advantage in the litigation*. When a plaintiff *intentionally decides* not to assert a claim against a party known to be potentially liable, there has been no mistake and the plaintiff should not be given a second opportunity to assert that claim after the limitations period has expired.") (emphasis added). In the instant case, no tactical advantage could possibly accrue to plaintiff from suing the wrong officer.

What would—or could—the reason be for intentionally omitting the proper initiating officer from a malicious prosecution suit? *Cf.* Nov. 8, 2017 Order at 50 ("From the 50-h Hearing it is clear that Plaintiff raised the same claims now brought in this lawsuit and *did not know the identity* of the officer who investigated the robbery for which he was arrested or the precinct in which the officer worked.") (emphasis added).

Under CPLR 203, applicable through Federal Rule of Civil Procedure 15(c)(1)(A), the Second Amended Complaint against the proper defendant police officer relates back to the filing of the original complaint. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) ("[U]nder Rule 15(c)(1)(A), we must determine if New York state law provides a 'more forgiving principle of relation back' in the John Doe context, compared to the federal relation back doctrine under Rule 15(c)(1)(C). We hold that it does."). Defendant's new arguments do not alter this conclusion. *See also infra* Section IV(B).

### B.     Federal Rule 15(c)(1)(C)

The amended pleading also relates back under Federal Rule of Civil Procedure 15(c)(1)(C). This case does not rely on substitution for a John Doe defendant, since nothing has been produced to alter the court's conclusion that "the facts and circumstances indicate that Detective Tranchina should be substituted for [Detective Shapiro, the originally named defendant,] since Tranchina conducted the investigation related to Plaintiff's alleged unlawful robbery prosecution." Nov. 8, 2017 Order at 55. Federal Rule 15(c)(1)(C) is applicable because this is not a "John Doe" case. *Cf. Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) ("This Court's interpretation of Rule 15(c)(1)(C) makes clear that the lack of knowledge of a John Doe defendant's name does not constitute a 'mistake of identity.'") (quoting *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir.1995)).

Defendant argues that because plaintiff did not sign a release allowing the Corporation Counsel to access the sealed criminal case file, "the Office of the Corporation Counsel did not have access to the information the Court now faults it for not turning over during the applicable statute of limitations." Mot. for Reconsideration at 5.

The relevant inquiry under Rule 15(c)(1)(C), however, is whether the later named defendant knew or should have known within 120 days of the filing of a timely complaint that but for a mistake he would have been a defendant in the action. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 545 (2010) ("'[W]ithin the period provided by Rule 4(m) for serving the summons and complaint' (which is ordinarily 120 days from when the complaint is filed, see Rule 4(m)), the newly named defendant must have 'received such notice of the action that it will not be prejudiced in defending on the merits.'") (quoting Fed. R. Civ. P. 15(c)(1)(C)). "[A]ny delay on [plaintiff's] part is relevant only to the extent it may have informed [the newly named defendant's] understanding during the Rule 4(m) period of whether she made a mistake originally." *Id.* at 555. The Rule 4(m) timeframe was changed effective December 1, 2015 from 120 days to 90 days, but this lawsuit was filed on September 5, 2015 so the 120 timeframe applies. *See Galindo v. ASRC Fed. Holding Co., LLC*, No. GJH-15-940, 2016 WL 2621949, at *1 n.1 (D. Md. May 5, 2016) ("On December 1, 2015, the amended Rule 4(m) became effective, requiring that service be completed within 90 days of the filing of the Complaint. Because this action was initialed on April 1, 2015, the prior version of Rule 4(m), allowing 120 days for service, controls.").

Defendant's argument that "because of plaintiff's dilatory tactics, this Office could not have known that plaintiff had named the wrong party, or that Detective Tranchina was a proper party, until more than *three months* after the statute of limitations expired," is not decisive. Mot. for Reconsideration at 10. Plaintiff returned the appropriate release approximately 97 days after the suit was filed—i.e., less than the 120-day period previously allotted in Rule 4(m) for serving a summons. *Id.* at 8. The Corporation Counsel had more than 20 days to investigate the case and inform Detective Tranchina of his jeopardy.

That plaintiff may have known about Detective Tranchina—a highly unlikely hypothesis given that no tactical or strategic advantage could be gained by suing the wrong defendant—is also not dispositive under Rule 15(c)(1)(C). The Supreme Court in *Krupski* addresses this precise scenario.

> We agree that making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity. *We disagree, however, with respondent's position that any time a plaintiff is aware of the existence of two parties and chooses to sue the wrong one, the proper defendant could reasonably believe that the plaintiff made no mistake. The reasonableness of the mistake is not itself at issue.* As noted, a plaintiff might know that the prospective defendant exists but nonetheless *harbor a misunderstanding* about his status or role in the events giving rise to the claim at issue, and she may mistakenly choose to sue a different defendant based on that misimpression. That kind of deliberate but mistaken choice does not foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

*Id.* at 549 (emphasis added).

It is not possible to conceive of any situation in which a plaintiff "fully underst[ood] the factual and legal differences between the two" officers, Detectives Tranchina and Shapiro, and deliberately sued the wrong officer. *Id.*

> That a plaintiff knows of a party's existence does not preclude her from making a mistake with respect to that party's identity. A plaintiff may know that a prospective defendant—call him party A—exists, *while erroneously believing him to have the status of party B*. Similarly, a plaintiff may know generally what party A does *while misunderstanding the roles that party A and party B played in the "conduct, transaction, or occurrence"* giving rise to her claim. If the plaintiff sues party B instead of party A under these circumstances, she has made a "mistake concerning the proper party's identity" notwithstanding her knowledge of the existence of both parties. The only question under Rule 15(c)(1)(C)(ii), then, is whether party A knew or should have known that, absent some mistake, the action would have been brought against him.

*Id.* at 549 (emphasis added).

After learning of Detective Tranchina's involvement, the Corporation Counsel did nothing to warn the detective or inform plaintiff (and the wrong defendant apparently did nothing

13

to alert his counsel that he was not the right defendant). Naming the wrong defendant may have been careless of plaintiff's counsel, but it was not deliberate. As noted in the November 8, 2017 Order, the Supreme Court of the United States and the New York Court of Appeals have directed lower courts to focus on a prospective defendant's actual or constructive knowledge. *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 545 (2010); *Buran v. Coupal*, 661 N.E.2d 978, 983 (N.Y. 1995). Even if both parties were at fault for the mistakes in the instant case, the Corporation Counsel could have, and should have, solved the problem by prompt notification to plaintiff's counsel.

### C. Ethics of Government Counsel

The court notes its continued concern about the Corporation Counsel's ethical position in its handling of this case. The Corporation Counsel is held to a high ethical standard. The Office must be guided by the words of its leader that "[n]ot only must we vigorously advocate the legal position of the City, *but we should never be indifferent to the fairness of the outcome and its impact.*" Corporation Counsel's Message, http://www.nyc.gov/html/law/html/about/counsel-message.shtml (last visited Jan. 29, 2017) (emphasis added).

What would have been the legal harm in consenting to the addition of Detective Tranchina instead of filing a motion to dismiss? Why would the Corporation Counsel seek to quash a subpoena issued for the deposition of Detective Tranchina when it knew that he was the proper defendant? Even if these actions took place after the statute of limitations expired, the conduct is troubling. Had civility ruled the litigation, this litigation would likely have ended some time ago. The Corporation Counsel's hardball tactics may end up costing the residents of New York more money because plaintiff's counsel has been forced to litigate what would otherwise be unnecessary motions in a case with the potential for fee shifting. *Cf. Martinez v.*

*City of New York*, No. 16 CV 79 slip op. at 35, 62 (E.D.N.Y. Jan. 24, 2017) (citing the instant case and chastising defense counsel for failure to identify a key witness).

It would be particularly anomalous to dismiss this case because plaintiff's attorney was mistaken about which officer to sue. The invariable practice seems to be for the City—should an officer be held liable by the jury—to pay the judgment. *Cf.* F.S.C. Northrop, *The Complexity of Legal and Ethical Experience* 6 (1959) ("But although the life of the law is experience, as a great jurist has noted, it is also more than experience; for before experience can give anything as determinate, complex, particular and practical as law, it has to be analyzed."). From a fiscal point of view, it would make no difference which officer was named. *See* N.Y. Gen. Mun. Law § 50-k(3) (McKinney 2017) ("The city shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in any state or federal court, . . . provided that the act or omission from which such judgment or settlement arose occurred while the employee was acting within the scope of his public employment and in the discharge of his duties and was not in violation of any rule or regulation of his.").

### VI. December 12, 2017 Summary Judgment Order

#### A. Misleading Evidence Before the Grand Jury

Defendant Tranchina challenges the court's December 12, 2017 Order, ECF No. 93. An appeal of that order is pending and defendant claims that the order does not apply to him. Letter of the Corporation Counsel, ECF No. 108, Jan. 19, 2018. The December 12, 2017 Order held that the District Attorney and Detective Tranchina mislead the grand jury about the probative strength of the identification in the instant case, that there was not probable cause to initiate the robbery case against plaintiff and it denied qualified immunity.

The December 12, 2017 Order is confirmed. By separate order, the court set a briefing schedule on a second motion for summary judgment. *See* Jan. 25, 2018 Order, ECF No. 109.

Since the filing of the order, new evidence has come to light suggesting strongly that the grand jury was misled and that there was a lack of probable cause to initiate and continue the criminal robbery case against plaintiff. *See* Exhibit A. In a memorandum dated July 31, 2012, the Queens County District Attorney's Office wrote:

> There is video surveillance of the robbery from which still photos of the perpetrator were developed. The perpetrator does not appear to be the defendant based upon a comparison to his arrest photo of 4-24-06. I also recently tried defendant's murder case and observed him extensively. He does NOT appear to be the same person in the video surveillance or still photos.

*Id.* at 4 (emphasis in original).

This document tends to confirm the order in the instant case. *See, e.g.*, December 12, 2017 Order at 9 ("The dismissal was apparently based on a videotape in the possession of the police, which showed a person other than Plaintiff as the robber."); *id.* at 30 ("[Detective Tranchina] could have reviewed a video retrieved from the store, which showed a person who had come to the store the day before and who Mr. Sarwar had told police was the perpetrator."); *id.* at 32 ("There was also a video that was not shown to the grand jury . . . .").

The letter provides additional support for the court's conclusion of an injustice if this civil case were not allowed to proceed to trial. It particularly bolsters this court's original conclusion that "a civil jury could find that Detective Tranchina did not make 'a complete and full statement of facts either to the Grand Jury or to the District Attorney.'" Dec. 12, 2017 Order at 32 (citing *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). If a review of the video plainly showed a person other than plaintiff as the robber, it is a fair inference on summary judgment that the video was not shown to the prosecutor, or that the prosecutor and detective

16

colluded to withhold this highly probative evidence from the jury. *Cf. Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017) ("'[I]ntervening exercise of independent judgment' by a prosecutor to pursue the case usually breaks the 'chain of causation' unless the plaintiff can produce evidence that the prosecutor was 'misled or pressured' by the police.") (*quoting Townes v. City of New York*, 176 F.3d 138, 147 (2d Cir. 1999)).

### B. Applicability of Order

Detective Tranchina claims that the December 12, 2017 Order does not apply to him because (1) the motion for summary judgment was "filed only by former defendants City of New York and David Shapiro"; and (2) at the time the order was issued "Tranchina had not even been served with a complaint in this action, was not represented by counsel, and had not formally appeared as a defendant in this action." Letter of the Corporation Counsel, ECF No. 108, Jan. 19, 2018. This issue is moot since the court has allowed in effect a second motion for summary judgment. *See* Jan. 25, 2018 Order, ECF No.109.

For the sake of completeness and to assist the parties in their briefing of the second summary judgment motion, the court adds that the Corporation Counsel premised the original summary judgement motion on Detective Tranchina's conduct. He is mentioned seven times in the Rule 56.1 Statement, four times in the opening brief, and five times in the reply brief. The motion for summary judgment was filed while plaintiff's motion to add Detective Tranchina as a new defendant was pending. He had been deposed in the case, and the Corporation Counsel filed a motion ostensibly on his behalf to quash the subpoena issued for his deposition. *See* Nov. 4, 2016 Letter of Corporation Counsel, ECF No. 38. In response to this motion, the magistrate judge issued an order stating, "[t]he Court expects that defense counsel, *who represents Detective Tranchina*, will have debriefed him in advance of the November 21 settlement

17

conference." Nov. 10, 2016 Order (emphasis added). At the time of the filing of the December 12, 2017 Order, he was a defendant in the case. *See* Second Am. Compl., ECF No. 88, Nov. 30, 3017.

It has been observed by this court and other judges of this district that it is the practice of the City of New York to pay judgments on behalf of police officers, *see supra* Section IV(C), and for all practical purposes, the City directs and controls the litigation without respect to the police officer named. *Cf. Strada v. City of New York*, No. 11–CV–5735, 2014 WL 3490306, at *8 n.6 (E.D.N.Y. July 11, 2014) ("[H]ere, the City—the originally named party—has the duty to represent and indemnify the untimely-added officers. . . . [T]he statutory duty of the City to indemnify its officers, even absent vicarious liability, is sufficient to create a unity of interest between the parties.").

An example of this litigation reality comes from the motion for reconsideration, which the Corporation Counsel filed challenging the relation back order, when he purported to represent only the City and Detective Shapiro. *See* Def.'s Mem. of Law, ECF No. 87, Ex. 9 ("Defendants City of New York ('City') and David Shapiro ('Shapiro'), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this Memorandum of Law in support of their motion for reconsideration . . . ."); Decl. of Kavin Thadani, ECF No. 87, Ex. 1 ("I am a Senior Counsel in the Office of Zachary Carter, Corporation Counsel of the City of New York, and the attorney for defendants City of New York ('City') and David Shapiro."). The November 8, 2017 Order—now challenged in effect by Detective Tranchina, although the motion is brought in the name of Detective Shapiro—effectively dismissed Detective Shapiro from the lawsuit. The Corporation Counsel's filing of

this motion implicitly recognizes that the City is the only party with a financial stake in the litigation.

### VII. Manifest Injustice

The Federal Rules of Civil Procedure is merits oriented. *Cf.* Fed. R. Civ. P. 1 ("[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the *court and the parties* to secure the *just*, speedy, and inexpensive determination of every action and proceeding." (emphasis added)); *Foman v. Davis*, 371 U.S. 178, 181 ("[It is] entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of [] mere technicalities."). The Supreme Court of the United States has relied on manifest injustice in a strong opinion by Justice Sotomayor directly bearing on relation back:

> [The Supreme Court's] reading is consistent with the purpose of relation back: to balance the interests of the defendant protected by the statute of limitations with the *preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits*. A prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose. *But repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity.* Because a plaintiff's knowledge of the existence of a party does not foreclose the possibility that she has made a mistake of identity about which that party should have been aware, such knowledge does not support that party's interest in repose.
>
> Our reading is also consistent with the history of Rule 15(c)(1)(C). That provision was added in 1966 to respond to a recurring problem in suits against the Federal Government, particularly in the Social Security context. Advisory Committee's 1966 Notes 122. Individuals who had filed timely lawsuits challenging the administrative denial of benefits often failed to name the party identified in the statute as the proper defendant—the current Secretary of what was then the Department of Health, Education, and Welfare—and named instead the United States; the Department of Health, Education, and Welfare itself; the nonexistent "Federal Security Administration"; or a Secretary who had recently retired from office. By the time the plaintiffs discovered their mistakes, the statute of limitations in many cases had expired, and the district courts denied the plaintiffs leave to amend on the ground that the amended complaints would not relate back. *Rule 15(c) was therefore "amplified to provide a general solution" to this problem.* It is

conceivable that the Social Security litigants knew or reasonably should have known the identity of the proper defendant either because of documents in their administrative cases or by dint of the statute setting forth the filing requirements. Nonetheless, the Advisory Committee *clearly meant their filings to qualify as mistakes under the Rule.*

*Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550-51 (2010) (emphasis added) (internal citations omitted).

Given the circumstances of the present case, it would be a miscarriage of justice (which could not be cured through a malpractice suit against plaintiff's counsel, as suggested by the Corporation Counsel), for the court to hold that the amended pleading does not relate back to the filing of the original complaint. This matter should go to the jury.

## VIII. Conclusion

Defendant's motion for reconsideration of the court's November 8, 2017 Order, ECF No. 84, is denied. The December 12, 2017 Order, ECF No. 93, is confirmed.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: January 30, 2018
Brooklyn, New York